## L. P. HOVEN v. GEORGE T. LEEDHAM.
## FRIEND CROSBY & COMPANY, RESPONDENT.[1]

July 28, 1922.

No. 22,903.

**Action for money received will not lie against defendant not indebted.**

1. An action for money had and received cannot be maintained when it appears that the defendant has no money in his hands which he may not justly retain.

**When seller cannot claim lien on ground that draft in payment was dishonored.**

2. Upon a cash sale of personal property, a seller who gives the buyer possession can no longer claim a lien upon the property or the proceeds of its resale on the ground that a draft given in payment was dishonored after the property was received by the drawee.

**Time of presentment of draft unimportant in fixing payee's rights against drawer, when.**

3. Unless the drawee had notice of the draft before he received the property, the exact time of its presentment is not important in determining the rights of the payee as against him.

[1] Reported in 189 N. W. 601.

Question not reviewable because proceedings not included in settled case.

    4. Alleged error in requiring an election between two causes of action pleaded cannot be considered upon the record presented.

Action in the district court for Ramsey county to recover the purchase price of certain steers. The case was tried before Hanft, J., who when plaintiff rested denied defendant's motion to dismiss the action, denied plaintiff's motion for a directed verdict at the close of the testimony and granted defendant's motion for a directed verdict. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

    *John A. Pearson* and *D. J. O'Keefe*, for appellant.

    *P. H. O'Keefe* and *C. C. McElwee*, for respondent.

LEES, C.

This action was brought to recover the purchase price of 159 head of cattle. The complaint alleged, as a first cause of action, a contract between appellant and George T. Leedham and Friend Crosby & Company, delivery of the cattle, and a failure to pay a portion of the purchase price, and, as a second cause of action, that the defendants were indebted to appellant on account of money had and received to his use by reason of the facts stated in the first cause of action. Leedham and Friend Crosby & Company answered separately and the case came on for trial before the late Judge Brill in June, 1921. Judgment against Leedham was ordered, and subsequent proceedings were against Friend Crosby & Company, hereafter referred to as the respondent. The appellant was required to elect whether he would proceed upon his first or second cause of action. He elected to proceed upon the second. The case was continued. An amended complaint was filed and the trial took place before Judge Hanft in October, 1921. When all the evidence was in, both parties moved for a directed verdict. Respondent's motion was granted. Thereafter appellant made the usual blended motion, which was denied and this appeal followed.

Appellant is a South Dakota stockman. Respondent is a corporation dealing in live stock at South St. Paul. It buys and sells

for others and charges a commission for its services. It employed Michael W. Murphy to solicit consignments of live stock in South Dakota. He was acquainted with Leedham, who was an Iowa cattleman whose relations with respondent are not clearly disclosed. Appellant owned 170 head of cattle and had them on his farm near Hoven. Murphy knew that the cattle were for sale. He was acquainted with appellant and brought Leedham to him, introducing him as a stock feeder from Iowa. Negotiations for the purchase of the cattle followed and resulted in an agreement of sale. It was agreed that the cattle should be weighed on the stockyards scales at Hoven and paid for according to weight, at prices ranging from 11 cents to 8 cents a pound. Delivery was to be made within 60 days. The terms of the agreement were set forth in a written instrument, in which respondent was named as purchaser and to which its signature was affixed by Leedham. It was not shown that he had any authority to enter into a contract in respondent's behalf or to sign its name to the instrument in question. On the same day when this was done Leedham made a draft on respondent for $7,000 as an advance payment on the cattle. It was duly presented for payment and was paid. The amount was charged against Leedham in respondent's books of account.

The cattle remained in appellant's possession until September 18, 1920. On that day 88 head were shipped from Hoven to South St. Paul. Appellant testified that Murphy was at Hoven on that day; that a question arose as to whether the cattle were to be shipped to Chicago or to South St. Paul, Murphy insisting that respondent's money was invested in them and that they must be consigned to it; that before shipment was made a telegram was sent to inquire whether respondent would accept Leedham's draft for $8,000, and it replied that it would. Such a draft was accordingly drawn, forwarded for collection, and paid in due course, and the amount charged to Leedham in respondent's books. On receipt of respondent's reply, the cattle were shipped to it at South St. Paul. When they arrived, at Leedham's request they were reshipped to Chicago where they were sold, the net proceeds of their sale being $8,513.83. When Leedham reshipped them he gave respondent a draft on the

Chicago consignee for $10,500, and that amount was credited on his account. Subsequently he gave respondent a check for $1,500 to make up in part the difference between the Chicago draft and the amount for which the cattle were sold. When this transaction was completed, appellant had received $15,000 from respondent upon the two drafts Leedham had issued, and respondent had received $8,513.83 from the sale of the cattle and $1,500 from Leedham.

On September 25 there was a second shipment of 71 head of cattle. They were loaded at Hoven and consigned to respondent, Leedham being named in the bill of lading as the consignor. Of the 170 head covered by the agreement, 11 were retained by appellant. At the stipulated price, their value was $1,087.80, and this was added to the amount of the two drafts appellant had received. The aggregate, or $16,087.80, was then deducted from the agreed sale price of all the cattle and Leedham gave appellant a draft on respondent for $5,532.30, representing the difference between the two amounts. Appellant did not retain the bill of lading and did not require respondent to agree to honor the draft before he allowed the cattle to be shipped. Appellant accompanied a shipment of other cattle to South St. Paul, going on the same train which carried the Leedham cattle. The cattle arrived and were received by respondent on September 27. It sold 27 head on that day and the remainder on the following day. After paying the freight and other charges, the proceeds of these sales amounted to $5,582.32. This amount was credited to Leedham upon his account representing the transactions in which appellant's cattle were involved. When this credit was entered the account showed a balance in his favor of $511.05, for which the respondent was later charged in garnishment proceedings instituted by appellant.

It will be perceived from the foregoing narration of the facts that appellant received $15,000 from respondent for 159 head of cattle, whereas under his contract with Leedham he was entitled to receive $5,532.30 more, and that respondent received but $14,096.15 as the net proceeds of the sale of all the cattle. Otherwise stated, respondent advanced to appellant $903.85 more than it received for his cattle. Nevertheless appellant asserts that the proceeds of the

sale of the last shipment, to the extent of the difference between the amount he received and the stipulated price in his contract with Leedham, was money in the hands of respondent which he was justly entitled to receive, and this presents the first question for determination.

1. If the last shipment constituted a separate and distinct transaction in no manner connected with the first, or with the advances on the cattle made by respondent when it honored Leedham's drafts, there might be some merit in appellant's position. But it is impossible to treat the second shipment as an independent transaction. The drafts represented advances made on account of all the cattle Leedham had purchased from appellant and amounted to more than the entire proceeds of the sale of all that were shipped to respondent. It has no money in its hands which belongs to appellant or which it may not justly retain, and, unless it has, an action for money had and received cannot be maintained. Brand v. Williams, 29 Minn. 238, 13 N. W. 42; Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443; Heywood v. Northern Assur. Co. 133 Minn. 360, 158 N. W. 632, Ann. Cas. 1918D, 241; Seastrand v. D. A. Foley & Co. 144 Minn. 239, 175 N. W. 117.

2. Appellant contends that in any event he is entitled to recover on another theory. He asserts that this was a cash sale; that payment and delivery were to take place concurrently; that there was only a conditional delivery of the second lot of cattle, for the reason that the draft was not the equivalent of money and was not accepted as payment, and when it was dishonored appellant had the right to regain possession of the cattle or recover the proceeds of their sale. In support of this he cites National Bank of Commerce v. Chicago, B. & N. R. Co. 44 Minn. 224, 46 N. W. 342, 560, L. R. A. 263, 26 Am. St. 566, and Freeman v. Kraemer, 63 Minn. 242, 65 N. W. 455.

In neither case were the facts substantially the same as here. In the first, wheat was loaded from an elevator into railroad cars for shipment, but the elevator company did not give shipping orders or surrender control of the wheat to the railroad company for transportation to the purchaser. In effect the wheat was merely stored

in the cars and was as much in the possession of the elevator company as though it were still in its elevator. In the second, the purchaser was named as consignee of the goods sold, but the seller retained the bills of lading and forwarded them with drafts attached to a bank to be delivered to the purchaser on payment of the drafts. The railroad company delivered the goods without the production of the bills of lading, and the consignee sold the goods to a good faith purchaser who was held to have acquired no title because his vendor had acquired none under the circumstances.

Carter, Rice & Co. v. Cream of Wheat Co. 73 Minn. 315, 76 N. W. 55, is also distinguishable. Delivery and payment were to be simultaneous. Each act was made dependent on the other. Upon getting possession of the property the purchaser evaded payment, and it was held that the title did not pass and the would-be purchaser took as trustee for the seller who might reclaim his property.

In the case at bar there was an unconditional contract to sell specific property in a deliverable state. The time of payment and of delivery were postponed. Subsequently the seller delivered the property to a carrier for transportation for the buyer. He did not retain the bill of lading or have it issued in his name, or attach it to a draft for the amount to be paid and forward it, together with the draft, for the acceptance or payment of the draft prior to the delivery of the property. He exchanged his possession of the property for the buyer's draft upon the commission merchant to whom the property was consigned for sale. When the draft was dishonored he had only the rights of an unpaid seller in the property after surrendering possession to the buyer.

The provisions of the Uniform Sales Act applicable to the facts are sections 19, 20, 52, 53 and 56, of chapter 465, pp. 772, 774, 782, 783, 784, Laws 1917. It is a familiar rule that possession or control of the property is essential to the existence of a seller's lien. Such a lien presupposes that title has passed to the buyer but not possession. When possession is lost or control relinquished the lien is gone. 3 Dunnell, Minn. Dig. § 8583. It seems clear that the facts would not justify the claim of a seller's lien upon the cattle after they were received by the respondent at South St. Paul. Neither

do they sustain appellant's contention that he had a lien upon the proceeds of their sale, or that in equity such proceeds were impressed with a trust in his favor. Barnes v. Thuet Bros. 116 Iowa 359, is not in point, for we are not here concerned with the rights of a plaintiff who has advanced the money to purchase the specific property in reliance upon the established practice of the commission man to pay drafts to reimburse the plaintiff.

3. The time of day when the draft was presented was not important. Respondent received the cattle on September 27 and the draft was not presented until the twenty-eighth. It was not shown that it had notice of the draft prior to its presentment. In this respect the case differs from First Nat. Bank of McClusky v. Rogers-Amundson-Flynn Co. 151 Minn. 243, 186 N. W. 575.

4. Complaint is made because appellant was required to elect between the two causes of action pleaded. The proceedings before Judge Brill are not incorporated in the settled case. It was he who required the election to be made. Judge Hanft correctly ruled that he was bound by Judge Brill's order, and that is all there is before us on this appeal. It may be true that Leedham was respondent's agent and had authority to bind it by the contract with appellant. In that event appellant might have recovered the unpaid portion of the contract price from respondent. But if Leedham was the real purchaser and respondent only his agent to sell for a commission, appellant cannot saddle his loss upon respondent. If the cattle had not been sold on a falling market, or if Leedham had been financially responsible, there would have been no loss. As it was, the price declined after the contract was made and before the cattle were marketed. Appellant received from respondent all that it got for them and has a judgment against Leedham for the remainder of the contract price. He cannot compel respondent to answer for damages on Leedham's contract and cannot demand money which respondent never received.

Order affirmed.