## COMMERCIAL INVESTMENT TRUST v. LUNDGREN-WITTENSTEN COMPANY.[1]

December 2, 1927.

No. 26,276.

**When holder of draft must suffer by insolvency of the drawer.**

1. Where the holder of a draft, payable on demand, negligently fails to present the same for payment within a reasonable time, there being funds for its payment, and thereafter the drawer fails, the holder must suffer the loss.

**When creditor's negligence in holding draft operates as payment.**

2. When such draft has been sent by a debtor to his creditor on account, such negligence on the part of the creditor makes the draft his own and operates as a payment.

Bills and Notes, 8 C. J. p. 545 n. 65; p. 546 n. 66; p. 547 n. 77.
Payments, 30 Cyc. p. 1207 n. 96; p. 1208 n. 99; p. 1209 n. 4.
Sales, 35 Cyc. p. 506 n. 86.

See note in 23 A. L. R. 1206; 5 R. C. L. 509; 1 R. C. L. Supp. 1418; 4 R. C. L. Supp. 330.

Plaintiff appealed from an order of the district court for Marshall county, Grindeland, J. denying its motion for a new trial. Affirmed.

*M. A. Jordan* and *Thomas Kneeland,* for appellant.

*Julius J. Olson* and *Rasmus Hage,* for respondent.

WILSON, C. J.

Plaintiff appealed from an order denying its motion for a new trial. The action is in replevin, but the controversy relates to whether a draft was received and retained by plaintiff under such circumstances as to constitute payment.

Defendant owed plaintiff the sum of $1,044.25, secured by certain Star motor vehicles, and an item of $25 termed "attorney's fees."

[1]Reported in 216 N. W. 531.

On October 20, 1925, at the instance of defendant, the Warren National Bank of Warren, Minnesota, issued its draft on the First National Bank of Minneapolis for $576.85 to Olson & Hage, who indorsed it in blank (their connection with the transaction being an unimportant incident), and defendant on October 28, 1925, transmitted the draft in a letter, stating it was the proceeds from the sale of one of the cars, to the Mercantile Acceptance Company, plaintiff's agent at Minneapolis. In response thereto, the agent wrote defendant:

"November 4, 1925.

"Lundgren-Wittensten Co.,
"Warren, Minnesota.

"We are in receipt of your letter, with check enclosed in the amount of $576.85.

"We wish to advise that if you will send us the balance by return mail we will split the Attorney's fees with you, which although you say were not necessary expense to incur, we certainly would not have used this method had it not been necessary. We will now do our part by splitting the expense with you and stand $12.50 of it ourselves.

"Therefore, if you will send us the difference between the $1,044.25, less the $576.85, and plus $12.50 we will close the matter out.

"Yours very truly,
"Mercantile Acceptance Company
"HWT:LD                 By:                        "

Plaintiff did not present the draft for payment but held the same awaiting a reply to its letter. On November 23, 1925, the drawer suspended payment. It had, at the time of the date of the draft and at all times thereafter up to November 17, 1925, funds with the drawee in excess of the amount of the draft.

Plaintiff asks us to construe the letter as meaning that the draft was not accepted and would not be unless "by return mail" it received the balance; and it claims that defendant's failure to answer

was the occasion for the delay in presenting the draft for payment. However, it seems to us more reasonable to say that the letter acknowledged the receipt of the draft, and that plaintiff's agent then offered a compromise on the claim for attorney's fees if it could get the balance by return mail. There is nothing in the letter indicating any thought of refusing the draft. Creditors seldom do that. The remittance was unconditional. The evidence shows that this remittance was to meet a specific item of the indebtedness, but that is not of controlling importance.

Defendant was not under any legal duty to answer the letter, nor was there anything in the letter to indicate to defendant that plaintiff was waiting for a reply. It did not ask for one. It held the draft for a period of 12 days, during which it could have had the money by presenting the draft. This was without legal excuse. Its duty was to return the draft or present it for payment. It did neither. Whether a holder retains a check or bill for an unreasonable time is usually a question of fact. The circumstances and facts in this case support the court's conclusion that plaintiff was guilty of negligence and that such negligence was the cause of the loss occasioned by the closing of the bank.

[1] This draft was an inland bill of exchange. G. S. 1923, §§ 7169, 7172. Presentment for payment must be made within a reasonable time after the last negotiation thereof. G. S. 1923, § 7114. Delay in making presentment for payment is excused when the delay is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence. G. S. 1923, § 7124.

When the holder fails to present a check within a reasonable time after its issue, the drawer is discharged from liability thereon to the extent of the loss caused by the delay. G. S. 1923, § 7229; Peterson v. School Dist. No. 14, 162 Minn. 357, 203 N. W. 46; 5 R. C. L. 509. The same rule logically and necessarily applies to the failure of the holder to present, within a reasonable time, a bill of exchange payable on demand. The law is that if the drawee and the holder are in the same city the check or bill of exchange on demand must, in the absence of special circumstances, be presented

for payment not later than the next business day after it is received. If in the meantime the bank fails, the loss must fall upon the drawer of the check, because he should carry the risk of the drawee's solvency during that period of time.

Where the sender buys a draft, as in the instant case, he substitutes his bank's check in place of his own; and, since he selects the draft as his medium of payment, he assumes the risk of the solvency of the drawer of the draft until the holder has had a reasonable time to present the same for payment. When the drawer fails, after the expiration of the reasonable time, the holder must suffer the loss, provided sufficient money was at all times available.

Most of the authorities relate to the solvency of the drawee bank, because the cases involve checks. This transaction is in substance the same as if defendant had drawn its own check on the local bank, except that the method adopted was probably more satisfactory to the creditor in that the draft had the characteristics of stability and enabled it to get its money quicker and with less inconvenience. The drawee was interested only to the extent of its having funds of the drawer.

[2] The giving of a check or draft by a debtor is not an absolute payment of the debt unless it is so agreed. 5 Dunnell, Minn. Dig. (2 ed.) §§ 7445, 7446; Taylor v. Wilson, 11 Met. 44, 45 Am. D. 180; 30 Cyc. 1207. If payment of such check or draft given for personal property is refused for want of funds, the vendor may retake the property. Nat. Bank of Commerce v. C. B. & N. R. Co. 44 Minn. 224, 46 N. W. 342, 560, 9 L. R. A. 263, 20 A. S. R. 566; J. I. Case Th. M. Co. v. Bargabos, 143 Minn. 8, 172 N. W. 882; Dalrymple v. Randall, Gee & Mitchell Co. 144 Minn. 27, 174 N. W. 520. The presumption is that they are received only as conditional payment. For convenience they pass as money in business transactions, and those who retain possession thereof must recognize a duty to others. Negligence on the part of the holder makes the draft his own and operates as a payment of the debt. Note, 7 L. R. A. 442; 30 Cyc. 1209, subd. b. It changes a conditional payment to an absolute one.

Affirmed.