JOE KIRK, Appellee, v. LEO C. MADSEN, doing business as MADSEN MOTOR COMPANY, et al.; JOHN BIRD, Appellant.

No. 47419.

(Reported in 36 N. W. 2d 757)

APRIL 5, 1949.

Baron & Bolton, of Sioux City, for John Bird, appellant.

John D. Beardsley, of Onawa, for appellee.

SMITH, J.—Defendants Madsen ("Madsen Motor Company") and Bird ("Tri-State Motor Company") are used-car dealers in Sioux City, Iowa. Plaintiff has lived at Onawa, Iowa, for twenty-eight years and describes himself as "engaged in * * * farming, ranching and rodeoing." He bought this Buick car in question at Gibbon, Nebraska, the last of May 1948 for $2500 and received a "certificate of title" a couple of weeks later, issued by the state of Nebraska. He says he bought the car "for the purpose of selling it again."

He first met defendant Madsen June 21 or 22. After some negotiations he agreed to sell the car for $2275. He knew Madsen was in the business of buying and selling used cars. He delivered the car to Madsen at Onawa in the evening and at the same time took Madsen's check, dated June 22, 1948, on a Sioux City bank, for the agreed price. He testifies he told Madsen: "I will keep the title, and I will pin the title to the check and if the check clears, you can have the car."

The next morning he went to Sioux City and presented the check with the "title" attached. The bank refused payment because Madsen "didn't have no money there." Plaintiff then went to Madsen's used-car lot and Madsen said to leave the check and the "title" at the bank "and the money would be there that afternoon; that his finance company hadn't got around to put the money in there for him."

The next day, June 24, the money still was not there and plaintiff again hunted up Madsen who told him "the money will sure be there tomorrow." This process was repeated the following day and plaintiff demanded the car. Madsen said to him: "Well, no use to take the car; the money will be there by tomorrow at eleven o'clock." Madsen gave him $300 and said: "If the money isn't there at eleven o'clock tomorrow, I will give you the car and the money both." Madsen had already given defendant Bird the bill of sale hereinafter referred to.

When the money to redeem the check was not deposited and Madsen failed to meet plaintiff as he agreed to do when

534

phoned plaintiff went to his attorney. They at once visited Madsen who informed them the car was parked in Noltze's garage. This action was then commenced and the car taken.

In the meantime, according to defendant Bird's testimony, on June 24 he and Madsen who had dealt with each other for two years "in buying cars" made a purported exchange of cars whereby Madsen gave Bird a bill of sale of the Buick car ("to Tri-State Motors") and received in exchange Bird's $1700 check (signed "Tri-State Motor Company") and was also to receive a Dodge car, "worth about $200, maybe $250." The check bore the notation "Dif. on 36 Dodge for 1946 Buick." The Dodge car was never delivered. The bill of sale had written on it, "Title to be delivered today." The check was dated June 24, 1948, the bill of sale was undated but bore a notary public jurat ("subscribed and sworn to") dated June 25.

Defendant Triptew, an employee of defendant Noltze Motor Company engaged in selling cars, was present at appellant's place of business, witnessed the bill of sale and wrote the $1700 check for Bird. He too had had dealings with defendant Madsen "during the past few years." He testifies: "Where it [the bill of sale] says, 'Title to be delivered today,' that was in accordance with *our* understanding." (Italics supplied.)

The bill of sale is clear and unconditional on its face but Bird testifies: "After I bought the car and got the bill of sale from Mr. Madsen, he said that he might want to buy the car back, and I made a written agreement * * * which gave him the right to buy the car back for $1750 within ten days." This curious document is in the record: "This is to sertifi that Leo can have 46 Buick back for $1750 in 10 days from date." It is signed: "Chris Triptew by John Bird," and *dated July 1, 1948.*

More details of the evidence may be supplied as we discuss the legal questions involved. All testimony is undisputed as Madsen (the only one who could contradict either party) though he filed an answer (not shown in record) and was represented by counsel at the trial failed to appear in person and could not be found to be served with subpoena. Plaintiff's attorney offered to state what he expected to prove by the absent party if defendants would admit the witness would so testify if present. The

offer was rejected by defendant Bird's attorney. Madsen's attorney added this significant comment: "Your Honor, as his attorney I doubt very much whether you would get any kind of testimony for reasons that whatever testimony he might give might incriminate him. Of course, that would have to come from himself."

The trial court made findings of fact to the effect: (1) That title never passed from plaintiff to Madsen (2) that plaintiff was not estopped to assert his title, and (3) that defendant Bird was not a purchaser in good faith and for value.

Judgment was rendered for plaintiff against all defendants. Only defendant Bird has appealed. He predicates error upon the three findings above stated.

I. Did title pass from plaintiff to Madsen? Appellant bases his whole argument at this point on the proposition that in Iowa the statute requiring transfer of the certificate of registration "has no reference to the question of transfer of title as between buyer and seller," citing Garuba v. Yorkshire Ins. Co., 233 Iowa 579, 9 N. W. 2d 817, and Union Bk. & Tr. Co. v. Willey, 237 Iowa 1250, 24 N. W. 2d 796. These cases correctly hold that failure of the parties to comply with our statute requiring transfer of registration certificate does not invalidate a sale.

The argument assumes that the "title" which plaintiff here retained and pinned to the check corresponds in legal effect to the Iowa "certificate of registration." We are not in a position properly to appraise this assumption as we do not have the instrument before us, nor is the Nebraska statute shown. We are of course familiar with the rule that the law of a sister state upon a given proposition is presumed to be the same as our own in absence of proof to the contrary. Pfeffer v. Corey, 211 Iowa 203, 233 N. W. 126; In re Estate of Warner, 209 Iowa 948, 229 N. W. 241. But this rule may not require us to presume that what the witness refers to as "a certificate of title * * * issued by the state of Nebraska" is the same as "a certificate of registration" under our statute, sections 321.67 and 321.45.

We need not pass on the correctness of appellant's assumption. His argument ignores another and controlling cir-

cumstance—the fact that plaintiff, though he gave up possession of the car, expressly retained title which was not to pass unless "the check clears." "If the check cleared, he could have the car, but otherwise it was my car of course at all times." We think the term "title" referred not merely to the written certificate of title but to the legal title itself. The parties practically treated the certificate as a symbol representing the legal title. Plaintiff so treated it and there is no suggestion that Madsen did not so understand it. He apparently acquiesced. The "title" was to be attached to the check to be delivered if the check cleared.

As between plaintiff and Madsen there was a clear withholding of transfer of legal title, regardless of any consideration as to whether the Nebraska "certificate of title" is or is not the legal equivalent to the Iowa "certificate of registration."

In Crescent Chevrolet Co. v. Lewis, 230 Iowa 1074, 1077, 300 N. W. 260, 262, we held, on authority of Gray Bros. v. Otto, 178 Iowa 854, 160 N. W. 293, that acceptance of a check in payment for personal property, sold for cash but delivered to the purchaser at the time the check is delivered by him, "is tentative only and conditioned that the check be honored in due course. If the check be dishonored, title to the property does not pass, as between the parties and subsequent takers with notice of the vendor's equities." See also 46 Am. Jur., Sales, section 446, page 612, note 19; 55 C. J., Sales, 567, section 577(c).

As between plaintiff and Madsen the instant case is much stronger. It is not dependent alone on failure of the check to clear. There was in effect an express agreement that title would only pass upon payment of the check.

II. Is plaintiff by his conduct estopped to repossess the car in this action? Or more accurately, does the trial court's decision that he is not estopped find sufficient support in the record? We must remember there is here no trial de novo. The trial court's findings have the status of a jury verdict.

Plaintiff did allow Madsen to take possession of the car. Appellant argues there were other "indicia of title" because plaintiff knew Madsen was a used-car dealer, buying for the purpose of resale and, knowing this, unduly delayed commencing

action after payment of the check was first refused; also because during this delay he accepted a payment of $300 from Madsen.

The record however shows appellant relied solely on the fact of Madsen's possession. "I relied upon his word and the fact that he had the car with him * * *." There is no evidence he knew or relied on the other circumstances, even assuming they would add any strength to the bare fact of possession. He did not know where or when or from whom Madsen procured the car. He says he did not ask. His deal was only the next day after payment of Madsen's check was first refused and was the same day or the day before Madsen gave plaintiff the $300 to keep in addition to the car itself if the check was not redeemed by eleven o'clock the next day. Appellant's check may even have been the source of the $300 payment. The conveniently present Triptew (who was salesman for another dealer and not "in on this deal") testifies as appellant's witness:

"When we [used-car dealers] buy cars from another dealer we want him to have possession of the car and want him to tell that he is going to give title and that was done in this case. This car bore dealer's registration numbers in Nebraska. Neither I nor Mr. Bird asked Madsen where the car came from; it was none of my business. I didn't ask him, and it was not mentioned." Appellant says: "I didn't ask Madsen where he bought the car."

Whether, in a case such as this, possession alone, relied on by an innocent purchaser, is sufficient to support a claim of estoppel is a question upon which there is little if any conflict. Our own decision in Crescent Chevrolet Co. v. Lewis, supra, does not hold mere possession sufficient. In that case plaintiff had delivered to defendant's mortgagor not alone possession of the car but also an invoice which itemized the various charges making up its purchase price. Beneath this was shown the total sale price, $672, and below that the words "check $672." The plain inference was that the check was accepted in payment and we held the plaintiff was estopped to claim title against defendant, an innocent purchaser or mortgagee.

The opinion in that case cites the annotation in 31 A. L. R.

578 to the proposition. The pertinent part of the annotation commences on page 581, under IIa. In every case therein cited as supporting the right of the innocent purchaser to retain the property, it appears there were some indicia of title other than mere possession—indicia having some quality of negotiability, e. g., bill of lading or warehouse receipt, or order on a bailee to deliver. The same is practically true as to cases cited in similar annotations in 13 L. R. A., N. S., 697, 29 L. R. A., N. S., 709, and 47 L. R. A., N. S., 173; and in support of text, 46 Am. Jur., Sales, section 478. We find no case where title was retained in which it has been held that mere delivery of possession was sufficient to clothe the vendee with such indicium of title as to protect an innocent purchaser from the original vendor's right to repossess. See 55 C. J., Sales, 632, section 651(2), Effect of Possession.

In Young v. Harris-Cortner Co., 152 Tenn. 15, 26, 28, 268 S. W. 125, 128, 54 A. L. R. 516, 521, 522, the question is thoroughly discussed and disposed of. The Tennessee court quotes Williston·on Contracts, page 718:

"Although intrusting possession to another may lead an innocent third person to believe the possessor is the owner, no court has ever gone so far as to hold that the mere intrusting with possession would preclude the owner from asserting his title. It is an entirely proper thing for the owner of property to intrust another with it either for the advantage of the owner or of the possessor, and the law has never attempted to debar the owner from so doing."

The opinion further quotes Williston as saying that possession intrusted to one who habitually sells such goods does not necessarily invest him with apparent ownership so as to protect an innocent purchaser.

The Tennessee court concludes:

"It is possession coupled with indicia of title that estops the true owner from asserting claim to the goods.

"We have been unable to find a single decision which holds that, where there is no other fact or circumstance that might

mislead further than the fact of possession, a purchaser of the goods would be protected against the true owner."

There is no merit in the suggestion that plaintiff here was guilty of any laches or negligence in asserting his claim. The action was commenced June 28. The check was presented promptly. Action was brought within a few days. Plaintiff could not well be criticized for not commencing it sooner. We think there was no estoppel and the trial court correctly so held.

III. Whether appellant was an innocent purchaser for value is a question quite inseparable from that of estoppel and necessary to its existence. What we have heretofore said was on the assumption that appellant was such innocent purchaser. However, the trial court found he was not.

The testimony of appellant and his witness, Triplew, furnishes all the light we have on the question. According to appellant, Madsen had the car at his (appellant's) place of business. They were ostensible competitors. Instead of leaving it there after he dealt with Madsen, appellant took the car "over to Noltze's Garage," the place of business of another competitor. The car remained there until taken under the replevin writ.

Appellant's check was dated June 24 and he says it was cashed the same day. The bill of sale, which he says was delivered with the check, was not "subscribed and sworn to" before the notary public until June 25. And yet, according to appellant the notary was present when the deal was consummated. The discrepancy in dates is not explained. The instrument contained the unusual notation "Title to be delivered today," indicating perhaps a suspicious need for haste in completing the transaction.

The memorandum by which appellant agreed to sell the car back to Madsen for a $50 profit "within 10 days" was dated July 1, two days after this action was commenced, and seven days after the date of appellant's check to Madsen, though in his testimony appellant gives the impression it was practically a part of the same transaction. There is no explanation of this circumstance or of appellant's failure to deliver the Dodge car.

The Buick bore Nebraska dealer's number plates but appellant says he trusted Madsen to deliver him the title certificate

later. "Before the car could be licensed in Iowa, the Nebraska title certificate would have to be surrendered, but I didn't have to do that because I could use a Nebraska title because I have a Nebraska dealer's license too."

The burden was on appellant to establish his status as an innocent purchaser without notice. Starr v. Stevenson, 91 Iowa 684, 60 N. W. 217; Wallich v. Sandlovich, 111 Neb. 318, 196 N. W. 317. The trial court, with the witnesses before it, has held the burden was not carried. The circumstances and the apparently close business relationship of the defendants with each other were such as to make collusion easy and direct proof of it difficult.

Appellant made no inquiry of Madsen when the slightest investigation would have revealed plaintiff's ownership of the car. The car still bore Nebraska plates and no effort was made to find out whence and from whom Madsen obtained it. It almost seems there was a studied effort to avoid asking Madsen embarrassing questions under circumstances well calculated to arouse suspicion. The trial court was justified in entertaining a measure of incredulity under the circumstances, and in holding appellant had not proven he was an innocent purchaser. At least we cannot say the holding was without support.

From what has been said it is apparent the decision of the trial court should be affirmed. It is so ordered.—Affirmed.

All JUSTICES concur.