GUCKEEN FARMERS ELEVATOR COMPANY
v. CARGILL, INC.
HAROLD W. STRIEMER, d. b. a. STRIEMER GRAIN
COMPANY, THIRD-PARTY DEFENDANT.

130 N. W. (2d) 69.

August 14, 1964—No. 39,148.

THOMAS GALLAGHER, JUSTICE.

Action in conversion by plaintiff, Guckeen Farmers Elevator Company, referred to herein as the Guckeen Company, to recover from defendant Cargill, Inc., the reasonable value of two loads of shelled corn purchased from the Guckeen Company by Harold W. Striemer on May 28, 1958, and resold by him on that date to Cargill, Inc. At the close of the trial the court made findings and ordered judgment for plaintiff in the amount of $1,244.10, and this appeal is. taken from the judgment subsequently entered pursuant thereto. Judgment was also ordered against Striemer as third-party defendant, but he does not appeal.

At the time of the sale plaintiff was aware that Striemer was a licensed grain dealer and was purchasing the corn for resale. Plaintiff then made inquiry of another elevator company from whom Striemer had been purchasing corn at the same time and through it became

aware that in making the purchases Striemer was acting as agent of Humphrey Grain Company of Carroll, Iowa, referred to herein as Humphrey. As Striemer made various corn purchases for Humphrey, he would draw drafts on the latter for the amounts thereof which he would deposit to his account in the First National Bank of Fairmont. He would then issue his checks from such account in payment of the corn purchased, relying upon payment of the drafts by Humphrey to cover such checks.

The purchases made by Striemer under this arrangement involved substantial amounts. After each purchase the corn would be picked up in his truck and simultaneously paid for with his check as described. The corn would then be hauled and delivered by Striemer to such purchasers as Humphrey would designate. In the instant case it had instructed Striemer to deliver the corn purchased from plaintiff to Cargill, Inc., at Savage, Minnesota, and this was done. Other loads of corn purchased were delivered upon Humphrey's orders by Striemer to other dealers in Minnesota and to dealers in Iowa and Nebraska. All of it was hauled in trucks owned by Striemer for which he had been licensed to operate in hauling grain by the Minnesota Railroad and Warehouse Commission.

In the present transaction with plaintiff Striemer delivered to it two checks—both were dated May 28, 1958, were drawn on the First National Bank of Fairmont, and were signed by Striemer. The names of the payees and the amounts thereof were left blank. Authority was given to plaintiff to fill in the blanks on completion of the sale, and plaintiff then caused its name to be inserted as payee and filled in the amounts due thereon for the corn totaling $1,484.60. It then deposited the checks for collection in the regular course of business. On June 6, 1958, they were returned to it unpaid because funds on deposit in Striemer's account were insufficient to cover them. Striemer testified that the reason for this was that the drafts which he had drawn upon Humphrey to cover them had not been honored by the latter.

In reselling the corn to Cargill, Inc., Striemer presented sales slips indicating that Humphrey was the actual seller, and on June 2, 1958, Cargill, Inc., forwarded its check in payment of the corn to Humphrey.

Not until October 1959 did it receive notice that plaintiff claimed ownership of the corn and that the checks received by it in payment therefor had been dishonored.

Shortly after the checks were dishonored, plaintiff filed a claim with the Minnesota Railroad and Warehouse Commission for amounts covering them and others it had received from Striemer, all of which had been dishonored. Therein it sought recovery on a bond filed by Striemer pursuant to Minn. St. 27.04[1] at the time he was licensed by the commission. It recovered a sufficient amount to enable it to apply $240.50 on the two checks described. In the present action (commenced May 1960) for defendant's conversion of the corn, plaintiff fixed its value as equal to the remaining amount due on the checks.

The judgment is based upon findings that title to the corn never passed to Striemer; that although he was given possession and control of it, at no time did he possess the "indicia of title" thereto; and that in the absence of a showing of prejudice, plaintiff's delay in seeking recourse from defendant did not constitute laches or grounds for estoppel.[2] In a memorandum attached to the findings, the court stated:

"* * * Defendant's claim to being a bona fide purchaser would not be a defense since [neither] Striemer nor Humphrey Grain Co. had

---

[1]Minn. St. 27.04 provides in part: "License to engage in the business of a dealer at wholesale within the state shall be issued by the commissioner to such reputable persons as apply therefor, pay the prescribed fee, and comply with the conditions herein specified.

\* \* \* \* \*

"The applicant shall execute and file with the commissioner a corporate surety bond * * *, the amount and form thereof to be fixed by the commissioner, conditioned for the faithful performance of his duties as a dealer at wholesale for the observance of all laws relating to the carrying on of the business of a dealer at wholesale, for the payment when due of the purchase price of produce purchased by him when notice of default is given the commissioner within 30 days after the due date; provided, that the bond shall not cover transactions wherein it appears to the commissioner that a voluntary extension of credit has been given on the produce by the seller to the licensee beyond the due date * * *."

[2]Defendant does not rely upon plaintiff's laches or upon the theory of estoppel as a defense or as ground for reversal.

title to the corn. Section 512.23 * * * provides that the buyer acquires no better title than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. * * *

\* \* \* \* \*

"* * * If there was a responsibility upon plaintiff to make inquiry as to the sufficiency of Mr. Striemer's bank account there was an equal responsibility upon the Defendant Cargill, Inc., to make inquiry as to the title of the one delivering the corn and his right to sell the same. Had the corn been stolen no title would have passed to defendant. * * *

\* \* \* \* \*

"The record is free of any evidence * * * that Defendant was prejudiced * * * by delay on the part of the Plaintiff in making its demand upon the Defendant. * * * Defendant paid the purchase price to the Humphrey Grain Co. before the checks given by Mr. Striemer to Plaintiff had reached the bank. Defendant had a remedy * * * against the Humphrey Grain Co."

It is defendant's contention that, when plaintiff accepted Striemer's checks in payment of the corn and delivered possession and control of it to him with knowledge that he was purchasing it for resale, it manifested an intention to pass title to him at that time. It suggests that, if plaintiff had not intended to extend credit to Striemer in reliance upon the checks, it would have withheld delivery of the corn until it had investigated his financial standing at the bank upon which the checks were drawn; and would not have sought recovery on his bond before the Railroad and Warehouse Commission on the theory that the sale was complete on May 28, 1958. It advocates application of the "voidable title" theory[3] as more equitable than the "cash sale" doctrine[4]

---

[3]The "voidable title" theory is that where checks subsequently dishonored are given in payment of goods sold the seller may avoid the sale and recover his goods as against his vendee, but has no such recourse against a subsequent purchaser of the goods for value who makes his purchase from the vendee before the original seller has acted to avoid the sale.

[4]The "cash sale" doctrine is that where a sale of goods is for cash, and checks in lieu of cash are accepted in payment of the goods sold, title to

applied here by the court, since ordinarily a seller such as plaintiff is in a better position to prevent a loss due to a dishonored check by timely investigation of the worth of the check and the credit rating of his vendee than is a subsequent purchaser from such vendee who relies upon the latter's possession of the goods as evidence of ownership. It perceives a parallel situation in cases where credit has been extended to a vendee by the acceptance of his note or draft, and wherein it is generally held that title to the goods sold passes immediately to the vendee.

Plaintiff points out that the "cash sale" doctrine has been followed by this court and by a majority of the courts of other jurisdictions. It argues that the ultimate purchaser may be readily protected by demanding evidence of vendor's title other than possession and by investigation of the credit of vendors with whom he customarily deals by means of credit rating facilities usually available to him. It directs attention to the limited facilities for such investigations available to farmers, livestock raisers, grain elevator operators, and other small producers who often are called upon to sell their products before or after banking hours to truckers who purchase and pick up such products with the intent of hauling and reselling them within a few hours to some well-established mill, stockyard, factory, or distributor usually located some distance away.

In this state it is well settled that, where a cash sale of goods is intended and a check in payment thereof is accepted, there is an implied representation that the check will be paid upon presentation at the bank upon which it is drawn; and that if not so paid title to the goods will remain in the seller who may recover the goods or their value from a third party who has purchased them from the seller's vendee. Globe Milling Co. v. Minneapolis Elev. Co. 44 Minn. 153, 46 N. W. 306; National Bank of Commerce v. Chicago, B. & N. R. Co. 44 Minn. 224, 46 N. W. 342, 9 L. R. A. 263; J. I. Case Threshing Machine

such goods nevertheless does not pass until the checks have been honored, and if such checks are dishonored, the seller may recover such goods or their value from his vendee or from a subsequent purchaser of the goods from such vendee.

Co. v. Bargabos, 143 Minn. 8, 172 N. W. 882; Gustafson v. Equitable Loan Assn. 186 Minn. 236, 243 N. W. 106; Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54; DeVries v. Sig Ellingson & Co. (D. Minn.) 100 F. Supp. 781. In Gustafson v. Equitable Loan Assn. *supra*, this rule is expressed as follows (186 Minn. 239, 243 N. W. 107):

" '* * * Where goods are sold for cash on delivery, and payment is made by the purchaser by check on his banker, such payment is only conditional, and the delivery of the goods also only conditional; and if the check on due presentation is dishonored, the vendor may retake the goods.' National Bank of Commerce v. C. B. & N. R. Co. 44 Minn. 224, 229, 46 N. W. 342, 560, 9 L. R. A. 263, 20 A. S. R. 566; J. I. Case T. M. Co. v. Bargabos, 143 Minn. 8, 172 N. W. 882; Commercial Inv. Trust v. Lundgren-Wittensten Co. 173 Minn. 83, 216 N. W. 531, 56 A. L. R. 492; Pohl v. Johnson, 179 Minn. 398, 229 N. W. 555, Anno. 31 A. L. R. 578."

In Young v. Harris-Cortner Co. 152 Tenn. 15, 28, 268 S. W. 125, 128, 54 A. L. R. 516, the Minnesota rule was expressly followed. The court there stated:

"It is possession coupled with *indicia* of title that estops the true owner from asserting claim to the goods.

"We have been unable to find a single decision which holds that, where there is no other fact or circumstance that might mislead further than the fact of possession, a purchaser of the goods would be protected against the true owner.

"After carefully considering the facts of this cause, we are unable to say that anything that the complainant said or did misled the defendants, subvendees, or was in any wise responsible for their purchase of this cotton."

To the same effect, see Kirk v. Madsen, 240 Iowa 532, 36 N. W. (2d) 757.

■ This rule, of course, would have no application where the original seller has not only parted with possession of his goods but has gone further and placed the indicia of title thereto in the hands of the

134

vendee delivering the worthless check, Crosby v. Paine, 170 Minn. 43, 211 N. W. 947; Olsen v. G. N. Ry. Co. 139 Minn. 316, 166 N. W. 331; Ammon v. Gamble-Robinson Comm. Co. 111 Minn. 452, 127 N. W. 448; Cochran v. Stewart, 57 Minn. 499, 59 N. W. 543; or where the seller intended to extend credit to his vendee and the transfer of title to the latter was not contingent upon his payment of cash for the goods. Hoven v. Leedham, 153 Minn. 95, 189 N. W. 601, 31 A. L. R. 574; Jock v. O'Malley, 138 Minn. 388, 165 N. W. 233.

Of course, where a seller has been guilty of laches or conduct injurious to an innocent third party purchasing the goods from his vendee, he will be estopped from recovering them or their value as against such third party.[5] In the instant case any claims based upon laches or estoppel have been waived by defendant.

■ An examination of decisions from other jurisdictions indicates that the great majority of them are in accord with the "cash sale" doctrine followed in Minnesota,[6] with only a few adopting the

-----

[5]Minn. St. 512.23(1) of the Uniform Sales Act provides: "Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

In DeVries v. Sig Ellingson & Co. (D. Minn.) 100 F. Supp. 781, 787, affirmed (8 Cir.) 199 F. (2d) 677, certiorari denied, 344 U. S. 934, 73 S. Ct. 505, 97 L. ed. 719, the court quoted from Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54, as follows: "In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession in faith of his apparent ownership, it is the general rule that something more than mere possession and control is necessary. The authorities indicate that possession must be accompanied by indicia of title." See, also, Gustafson v. Equitable Loan Assn. 186 Minn. 236, 243 N. W. 106.

[6]Ison v. Cofield, 261 Ala. 296, 74 So. (2d) 484; Clark v. Hamilton Diamond Co. 209 Cal. 1, 284 P. 915; Publicker Commercial Alcohol Co. v. Harger, 129 Conn. 655, 31 A. (2d) 27; Kirk v. Madsen, 240 Iowa 532, 36 N. W. (2d) 757; Farmers Grain & Supply Co. v. Atchison, T. & S. F. Ry. Co. 121 Kan. 10, 245 P. 734; Hickerson v. Con Frazier Buick Co. (Mo. App.) 264 S. W. (2d) 29; Bustin v. Craven, 57 N. Mex. 724;

"voidable title" theory advocated by defendant.[7] Others have denied relief to the original seller as against a subsequent innocent purchaser from the seller's vendee, where the latter possessed not only the physical possession of the goods involved, but the *indicia of title* thereto as well; and where obviously questions of estoppel under the Uniform Sales Act were involved.[8] Of course where the question of estoppel based on indicia of title or laches is involved, Minnesota is in accord with these latter decisions. See, Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54. Here, however, where plaintiff delivered to its vendee nothing more than physical possession of the corn involved, it is obvious that cases determined on the basis of indicia of title would have no application. Determination of the merits of either doctrine would appear to be dependent almost entirely upon concepts of social policy and business convenience.[9] Since the "cash

---

263 P. (2d) 392; Wilson v. Commercial Finance Co. 239 N. C. 349, 79 S. E. (2d) 908; Cowan v. Thompson, 25 Tenn. App. 130, 152 S. W. (2d) 1036; Flatte v. Kossman Buick Co. (Tex. Civ. App.) 265 S. W. (2d) 643; Richardson v. Seattle First Nat. Bank, 38 Wash. (2d) 314, 229 P. (2d) 341; Holt v. Casto, 136 W. Va. 284, 67 S. E. (2d) 432; John Clay & Co. Livestock Comm. v. Clements (5 Cir.) 214 F. (2d) 803; Commercial Standard Ins. Co. v. McCollum (10 Cir.) 207 F. (2d) 768.

[7]Hoham v. Aukerman-Tuesburg Motors, Inc. 77 Ind. App. 316, 133 N. E. 507; Guckeen Farmers Elev. Co. v. South Soo Grain Co. 172 Neb. 426, 109 N. W. (2d) 728; Harten-Knodel Distributing Co. v. Harrison, 43 Ohio App. 383, 183 N. E. 294; Trumbull Chevrolet Sales Co. v. Maxwell (La. App.) 142 So. (2d) 805.

[8]Pingleton v. Shepherd, 219 Ark. 473, 242 S. W. (2d) 971; Keegan v. Kaufman Bros. 68 Cal. App. (2d) 197, 156 P. (2d) 261; Glass v. Continental Guaranty Corp. 81 Fla. 687, 88 So. 876, 25 A. L. R. 312; Capital Automobile Co. v. Ward, 54 Ga. App. 873, 189 S. E. 713; Watson Bros. Realty Co. v. Associates Discount Corp. 246 Iowa 483, 66 N. W. (2d) 384; Casey v. Gallagher, 326 Mass. 746, 96 N. E. (2d) 709; I-Land Auto Sales, Inc. v. Valle, 12 Misc. (2d) 1091, 175 N. Y. S. (2d) 732; Parma v. First Nat. Bank of Cameron (Tex. Civ. App.) 37 S. W. (2d) 274. The foregoing decisions would appear to be consistent with provisions of the Uniform Sales Act as embodied in § 512.23, above set forth.

[9]See Corman, *Cash Sales, Worthless Checks and The Bona Fide Purchaser,* 10 Vanderbilt L. Rev. 55, 76, where it is stated: "Cook has written

sale" doctrine affords protection to those who by their toil, effort, skill, and risk have produced the marketable commodities involved in cases of this kind, we feel that "concepts of social policy and business convenience" compel and justify our adherence to this doctrine.[10]

Affirmed.

---

that the principles applicable generally to bona fide purchasers are the result of various, sometimes confused, ideas of expedience, justice and supposed logic. As a principle in today's law, it can be defended, if at all, upon grounds of social policy and business convenience. Ballantine agrees, commenting that, 'The doctrine of bona fide purchase cannot be regarded as based upon self-evident principles of natural justice. It is the expression of various more or less clearly perceived notions of expediency, justice and business policy.' " See, also, Cook, *The Alienability of Choses in Action: A Reply to Professor Williston,* 30 Harv. L. Rev. 449, 477; Ballantine, *Purchase for Value and Estoppel,* 6 Minn. L. Rev. 87, 91.

[10]Defendant makes reference to 2 Williston, Sales (Rev. ed.) § 346(a), wherein Professor Williston advocates adoption of the "voidable title" theory on the ground that "where the goods are put into the buyer's hands without more, it can hardly be doubted that the seller means to allow him to deal with them as his own; to resell them immediately if he feels inclined."

Professor Vold takes issue with Professor Williston on this question. In an article in 1 Hastings Journal 111, 115, *Worthless Check Cash Sales, "Substantially Simultaneous" and Conflicting Analogies,* he states "that the seller in accepting the buyer's mere personal check actually has the intention of exchanging the ownership of the goods for the check that he receives rather than for the money he receives when the check is cashed, seems extremely questionable. * * * It seems much more nearly accurate * * * to say that the parties usually have no occasion to formulate and particularize with nicety just what the resulting legal relations from moment to moment until the check has been cashed are intended to be. * * *

\* \* \* \* \*

"* * * There is no reason for supposing that the parties in such cases intend * * * that the seller is to give utterly unsecured credit to the buyer for the interval until the check can be cashed."

Professor Corman in *Cash Sales, Worthless Checks and The Bona Fide Purchaser,* 10 Vanderbilt L. Rev. 55, 59, in reference to Williston's position states that "few American decisions have adopted Williston's proposition." He points out that the solution proposed by the Uniform Commercial Code, §§ 2-401(1)(b), 2-403(2), 2-403(3), conflicts with the approach evidenced in a major portion of American decisions and states

that if the code is adopted, "it will effect a reversal of presently established decisions." The author also notes that the "failure of the American Uniform Sales Act to include a section comparable to section 25(3) of the model English Sale of Goods Act, combined to encourage the increased application of the cash sale concept in worthless check cases."