DONALD J. GROSS, TRUSTEE FOR HEIRS OF
MICHAEL JAMES CULBERT, v. ROBERT H. POWELL
AND ANOTHER.
THE TRAVELERS INDEMNITY COMPANY,
THIRD-PARTY DEFENDANT.

181 N. W. (2d) 113.

November 6, 1970—Nos. 42262, 42409.

*Hammer, Weyl, Halverson & Watters* and *Anthony S. Downs,* for appellant.

*Reavill, Neimeyer, Johnson, Fredin & Killen, R. B. Reavill* and *Thomas R. Thibodeau,* for respondent Travelers.

*Harper, Eaton & Gustafson* and *Earl B. Gustafson,* for respondent Hendrickson.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rosengren, JJ.

Chester G. Rosengren, Justice.*

These are consolidated appeals by Robert H. Powell, defendant and third-party plaintiff, from judgment entered against him and from an order denying his motion for a new trial.

Without attempting to detail all of the facts to which the parties have stipulated, the pertinent ones appear to be as follows:

On April 10, 1968, at about 3:30 p. m. defendant Leo A. Hendrickson arranged to purchase a 1962 four-door Oldsmobile from Proctor Motor, Inc., a Minnesota corporation in St. Louis County (hereinafter referred to as Proctor). At the time of the purchase the bill of sale in the form printed on the reverse side of the 1968 Minnesota motor vehicle registration card covering the Oldsmobile was executed by Hendrickson as buyer and Proctor as seller and acknowledged before a notary public. At the same time (according to the stipulation) Hendrickson delivered to Proctor the agreed purchase price of said automobile in the form of a check for $600 dated April 10, 1968, drawn on the First

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

State Bank of Floodwood, and signed by Veronica Hendrickson, the wife of defendant Hendrickson, as maker. The seller accepted said check in full payment of the purchase price of the automobile. Hendrickson paid Proctor the sales tax in cash in the sum of $18. On the same date, Proctor delivered the keys to the car and the car to Hendrickson with the unrestricted right to use it as his own. Hendrickson thereupon drove the car from the premises of Proctor.

After taking possession of the car, Hendrickson encountered appellant, Robert H. Powell, and arranged to have him drive the 1962 Oldsmobile back to Floodwood, while Hendrickson drove his 1957 Oldsmobile. Powell thereafter drove the 1962 Oldsmobile as driver and sole occupant and while en route to Floodwood was involved in an automobile collision resulting in the death of Michael James Culbert and in personal injuries to Edwin Culbert, Jr.

Hendrickson had arranged with the First State Bank of Floodwood to bring the 1962 Oldsmobile to the bank on April 11, 1968, with the expectation of using said car as security for a loan to cover the $600 check issued to Proctor, but because of the demolition of the 1962 Oldsmobile in the collision, Hendrickson was not able to proceed with obtaining the loan. The delivered check was subsequently dishonored for insufficient funds, and thereafter Proctor commenced an action against Hendrickson and his wife to recover the purchase price of said automobile.

Plaintiff, Donald J. Gross, as trustee for the heirs of Michael Culbert, commenced an action for death by wrongful act against Hendrickson and Powell, as owner and driver, respectively, of the automobile involved in the accident. Appellant Powell instituted a third-party action against The Travelers Indemnity Company, alleging that title to the automobile had never passed to Hendrickson from Proctor and, therefore, Travelers, as Proctor's insurer, was obligated to defend Powell and would have the primary obligation to pay any judgment claims against him resulting from the accident.

The only issue presented in the case is: Who had ownership of the automobile involved in the accident for purposes of the Minnesota Safety Responsibility Act, Minn. St. 170.54? This statute provides:

"Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

The parties agree as to the results which follow from our determination of the ownership issue.

The trial court found that Hendrickson had purchased the car involved and had title thereto at the time of the accident and that Powell is not entitled to any benefits under Proctor's insurance coverage provided by Travelers. The court based its decision on the ground that title to the automobile had passed, under Minn. St. 336.2-401, at the time of delivery of the vehicle to the buyer, Hendrickson, as the buyer and seller had contemplated.

On this appeal, appellant contends that in a "cash sale," as between the parties only, no title passes to a buyer who pays the purchase price with a check which is subsequently dishonored. He bases his argument on two Minnesota cases, Gustafson v. Equitable Loan Assn. 186 Minn. 236, 243 N. W. 106, and Guckeen Farmers Elev. Co. v. Cargill, Inc. 269 Minn. 127, 130 N. W. (2d) 69, the reasoning of which, though not the result, is claimed to have been continued under the Uniform Commercial Code, specifically Minn. St. 336.2-511(3), which provides in part:

"* * * [P]ayment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment."

Respondent, Travelers, argues that here there was an agreement that title was to pass on delivery sufficiently explicit to pass title under Minn. St. 336.2-401(1), which provides:

"Each provision of this article with regard to the rights, obli-

gations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

"(1) * * * Subject to these provisions and to the provisions of the article on secured transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

In the alternative, Travelers contends that title passed on delivery of the car to the buyer in the absence of explicit agreement, citing Minn. St. 336.2-401(2), which provides:

"(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; * * *."

As a third contention, Travelers asserts that title passed to the buyer on delivery because the seller elected to affirm the sale after dishonor of the buyer's check through an election to sue the buyer for payment due pursuant to Minn. St. 336.2-511(3).

This court cannot accept appellant's contention that in a cash sale, where a check given in payment of the purchase price is subsequently dishonored, no title passes as between the parties. The opinions cited by appellant in support of his contention are distinguishable from this case. In those actions each of the sellers respectively sought to rescind the transactions of sale through an action against a third party, in Gustafson for replevin and in Guckeen for conversion. The sellers' actions in those instances were obviously inconsistent with any claim that title had passed to the buyer. The rule as laid down in Gustafson and quoted with approval in Guckeen states (186 Minn. 239, 243 N. W. 107, 269 Minn. 133, 130 N. W. [2d] 73):

" '* * * Where goods are sold for cash on delivery, and payment is made by the purchaser by check on his banker, such payment is only conditional, and the delivery of the goods also only conditional; and if the check on due presentation is dishonored, the vendor may retake the goods.' [Citations omitted.]"

This rule was elaborated upon in Guckeen as follows (269 Minn. 132, 130 N. W. [2d] 73):

"In this state it is well settled that, where a cash sale of goods is intended and a check in payment thereof is accepted, there is an implied representation that the check will be paid upon presentation at the bank upon which it is drawn; and that if not so paid title to the goods will remain in the seller who may recover the goods or their value from a third party who has purchased them from the seller's vendee."

The rule was correctly stated upon the facts presented in both Gustafson and Guckeen; but it was not intended, and did not purport, to cover the situation in which, as here, the seller has chosen to affirm the sale through a subsequent action to recover the purchase price from his vendee. Had this situation arisen prior to the passage of the Uniform Commercial Code, this court undoubtedly would have followed the lead of cases such as Redmond v. Lilly, 273 N. C. 446, 160 S. E. (2d) 287, which repeated the "rule" saying (273 N. C. 449, 160 S. E. [2d] 290):

"* * * [I]f the owner of a chattel contracted to sell it to a buyer for cash and delivered it to him in exchange for a check, believed by the seller to be good at the time it was accepted, the seller could, upon the dishonor of the check, recover the chattel from the buyer on the ground that the legal title had not passed from the seller to the buyer."

Continuing, the court then stated what we believe would have been the precode law in Minnesota (273 N. C. 450, 160 S. E. [2d] 290):

"* * * If, however, such seller elected to treat the transaction

as a sale and to recover judgment from the buyer for the agreed purchase price, he could do so. * * *

* * * * *

"* * * As between the plaintiff [seller] and the individual defendants [vendees], his filing suit against them for the contract price vests title to the goods in them as of the time it would have vested in them had no fraud been perpetrated."

This statement summarizes the law as it would have been found prior to the enactment of the code, had the issue of title ever arisen before this court under facts similar to those before us. Thus, it would appear that the rule which appellant would have this court find preserved under Minn. St. 336.2-511(3) was, in fact, never the law in this state.

We are reluctant to accept the so-called third contention made by Travelers, which in effect would require this court to find that title as of the time of this accident depended on subsequent conduct of the seller. Despite what would have been the law in pre-code days had the matter arisen then, the code prompts the opinion of this court that rights and obligations, including those flowing from title, should vest as of the occurrence of the transaction under scrutiny (here, the sale) and should not depend on the subsequent conduct of the parties—in this case the election by the seller to recover on the check rather than to rescind the transaction.

The drafters of the code felt it important to deemphasize the amorphous concept of title as the source of all rights and obligations concerning goods in order to achieve greater certainty in commercial dealings. As is succinctly stated in appellant's brief:

"The [Uniform Commercial] Code adopts a step by step approach, which by reference to its various provisions, determines the rights and duties of the various parties to a transaction at each juncture of the transaction regardless of where title lies * * *."

Accordingly, the code subordinates the title concept to a resid-

uary position, leaving it to determine case results only where no other specific section of the code is applicable. § 336.2-401.

We agree with the trial court that no other section of the code applies here and that § 336.2-401 therefore governs this case. On the view we take of the case, and because there is some slight doubt in our minds as to whether Proctor and Hendrickson "explicitly agreed" on the passage of title as contemplated in § 336.2-401(1), by which the code allows parties to set the conditions on which title will pass, we do not address ourselves to Travelers' first contention but assume arguendo that here there was no explicit agreement which would bring this case within § 336.2-401(1).

We find that title passed to the buyer here no later than at the time when unrestricted possession was delivered to the buyer under § 336.2-401(2), which provides in part:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, * * *."

Thus, at the time of the accident, title to the automobile rested in Hendrickson, who is deemed the owner of the automobile for purposes of Minn. St. 170.54 pursuant to § 170.21, subd. 9, which provides:

" 'Owner' means a person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this chapter."

This result is clearly correct in "imposing liability on those who have ownership and the power and right to prevent use of

the vehicle." Frye v. Anderson, 248 Minn. 478, 492, 80 N. W. (2d) 593, 602.

Under the statutory definition, it appears this court must reach the same result even were it to accept appellant's contention. In essence, appellant's claim would seem to be that the sale was conditional because title passage depended on honor or dishonor of the check accepted as payment in a cash sale. As a conditional sale, other provisions of § 170.21, subd. 9, would control and we would reach the same result as under the first portion of the definition—the buyer is deemed "owner" for purposes of § 170.54. This corroborates our first expressed conclusion. We do not believe that this conclusion is contrary to the language contained in Stroesser v. Hopper, 269 Minn. 96, 129 N. W. (2d) 913, which we have carefully reconsidered.

The respective policies of insurance were presumably written on vehicles garaged and licensed in Minnesota and included by implication pertinent statutes relating to ownership, title, and operation of the insured vehicles. Thus, it seems impossible to ignore the inclusion and impact of the cited sections of the Safety Responsibility Act.

In light of the foregoing, the decision of the lower court must be and is affirmed.

Affirmed.