IRVIN & MONTGOMERY, ADMINISTRATORS C. T. A. OF H. C. HARRIS, v.
W. C. HARRIS ET AL.

(Filed 14 December, 1921.)

**1. Actions—Parties—Administration—Proceedings to Sell Lands—Creditors—Equity—Appeal and Error—Statutes.**

Where issue has been joined before the clerk in proceedings by the administrator to sell lands of deceased to pay debts due by the estate, and upon transferring the cause to the trial court, the judge has ordered claimants to file original evidence of their indebtedness and then referred the matter, the proceedings assume the character of a creditor's bill in which a creditor, whose claim has been disallowed, may appeal to the Supreme Court, under the express provisions of C. S., 632, as a party aggrieved.

**2. Bills and Notes—Notes—Negotiable Instruments—Delivery.**

The legal delivery of a note does not alone depend upon giving it to the payee in person, but it may be evidenced by its delivery to another for the payee showing the maker's intent to part with control over it, and that it was for the payee's benefit in accordance with the terms of the instrument.

**3. Same—Partnership—Husband and Wife.**

Where a partnership consists of the husband of the payee of the note, and others, and there is evidence that the wife became insane before the note was delivered to her and in consequence it was delivered to the husband by the partnership, and he had assumed to endorse the check given in payment, in his wife's name, and received the money thereon: *Held,* sufficient of a valid delivery; but not of payment of the note, it being only lawful that the money should be paid to the guardian of the wife, or the check in payment endorsed by him, in order to cancel it.

**4. Partnership—Retiring Partners—New Firm—Creditors.**

Where a new partnership is formed upon the retirement of some of the members of the old, who agree among themselves to assume the debts of the old without the concurrence of the creditors, the agreement does not relieve the retiring partners from liability to creditors of the old concern.

**5. Equity—Election—Remedies.**

The doctrine of election between existing remedies arises either in the course of the litigation or from matter *in pais,* upon contract or from the operation of the law, only when these remedies are inconsistent or repugnant to each other, and in such instances a choice of one will preclude a recovery upon the other.

**6. Same — Partnership — Retiring Partners — New Firm — Creditors—Waiver.**

Where a new firm has succeeded the old upon the retirement of one or more of its members and under agreement between themselves, but not concurred in by the creditors, the new concern has assumed liability for the debts of the old, the liability of the retiring partners continues, and when a creditor files his proof of claim in bankruptcy proceedings of the new concern, it does not alone amount to an election of remedies, or a

waiver of right to proceed in the State court, against the retiring partner, for whatever sum that remains due on the old firm's note, each of these remedies being consistent with the other.

**7. Limitation of Actions—Statutes—Writing—New Promise—Continuing Liability.**

A new note embracing an old indebtedness of the maker is a sufficient writing signed by the parties to be charged to bring the old indebtedness within the operation of C. S., 416, and repel the bar of the statute of limitations.

**8. Same—Administration—Insane Persons—Guardian and Ward.**

C. S., 412, prescribing a time limit within which actions may be commenced against administrators or executors of the decedent's estate, commences to run against an insane claimant only from the time of the qualification of his guardian. C. S., 407.

APPEAL by Robert Harris, Jr., guardian of Mrs. Nettie Harris, from *Webb, J.,* at the February Term, 1921, of ROCKINGHAM.

Civil action, heard on exceptions to the report of a referee.

H. C. Harris died 11 April, 1911, leaving a last will and testament, which is as follows:

"Being in my wright mind I make this my last will having destroyed all others. I will my dear wife Lou F. Harris my Home and all Furniture and table ware & all the House hold things I will her my carriage and Black horses & carriage Harness I will her my new top buggy & harness I will my daughter my Home just as it is at my Dear Wife's death just as I gave it to my wife I will Eva my Clark plantation just as it is I will my son W. C. Harris my Wells plantation just as it is I will my son W. C. Harris my entire interest in Our Factory I mean with my Bro. Robt. Harris I will that my son take good care of his mother during her life time and support her out of the factory I will W. C. Harris one pare of the best mules I have & wagon and harness I will Eva one pare of the next best pare and wagon & harness I will that W. C. Harris sell all other personally Property at Private sail & divide equally with his mother and Eva that I may have I will all money that I may have on hand equal between W. C. Harris & Eva Harris.

"I mean for W. C. Harris to have my entire interest in my one half of the factory I will my granddaughter Lou Harris my Crafton lot this 8th day of March, 1899. H. C. HARRIS.

"P. S. I will that if Eva should die without heirs all I have willed to her I will it to the heirs of W. C. Harris. H. C. HARRIS."

"Probated 20 June, 1911, by the oath and examination of Scott Fillman, Robt. Harris, B. L. Hurdle, W. C. Harris."

For many years prior to his death W. C. Harris and his brother Robert Harris had conducted the business of manufacturing and selling

tobacco in the city of Reidsville under the firm name and style of Robert Harris & Brother. In 1904, after this partnership had been formed, Mrs. Nettie Harris, wife of H. C. Harris, loaned it an amount of money, which was credited to her on the books of the firm. This amount was increased from time to time until it reached $8,400, and on 9 January, 1909, Robert Harris & Brother executed to Mrs. Nettie Harris a promissory note, which was as follows: "$8,400. One day after date we promise to pay to Mrs. Nettie R. Harris eighty-four hundred dollars. Value received, with interest at 6 per cent per annum from date. 9 January, 1909. (Signed) Robert Harris & Bro." This note, which was executed in the lifetime of H. C. Harris, went into the possession of Robert Harris, Sr., husband of the payee. On 2 October, 1908, Mrs. Nettie Harris was adjudged insane and committed to the western hospital at Morganton, where she has since remained without lucid intervals. The note, it seems, remained among the papers of her husband until 29 March, 1913, when Robert Harris & Brother (at that time composed of Robert Harris, Sr., and W. C. Harris, son of H. C. Harris) drew two checks on the Bank of America aggregating $10,756 (the amount of the principal and interest of the note of $8,400), payable to the order of Mrs. Nettie Harris. These checks were delivered to Robert Harris and by him endorsed in the name of Mrs. Nettie Harris and delivered to J. H. Walker & Company. The checks were endorsed by Walker & Company, and paid by the Bank of America. After the death of H. C. Harris, the firm composed of Robert Harris and W. C. Harris conducted the business of the partnership until 9 June, 1913, when the firm and the individual members were duly adjudged bankrupt by the district court of the United States for the Western District of North Carolina. The claim of Mrs. Nettie Harris was proved by her guardian in the bankruptcy court against the new firm of Robert Harris & Brother, and credited with a dividend duly paid from the bankrupt estate.

At the time of his death (11 April, 1911), H. C. Harris was seized and possessed of several tracts of land. Although the will of H. C. Harris was probated 20 June, 1911, no one qualified as his personal representative until 30 June, 1913, when letters of administration with the will annexed were granted to Eugene Irvin and R. S. Montgomery. On 28 August, 1915, the administrators instituted a proceeding against the devisees and beneficiaries to sell the testator's land for assets. The defendants, answering and pleading various defenses, particularly denied the alleged debts, pleaded the statute of limitations, and alleged that the claimants, or some of them, had released the old firm by accepting the new firm of Robert Harris & Brother as their debtor. By an order of the court all claimants were directed to file with the administrators the

original evidence of their claims for inspection by the defendants. When the case was called the court ordered that all matters in controversy be referred to Lindsay Patterson, Esq., with directions to report upon his findings of fact and conclusions of law. On 28 July, 1914, Robert Harris, Jr., as guardian of Mrs. Nettie Harris, brought suit on her claim in the Superior Court of Rockingham County, but the claim was not reduced to judgment. It was presented to the referee, who, in disallowing it, made the following report:

"That exhibit 71 is a note executed by Robert Harris & Brother to Mrs. Nettie R. Harris for $8,400, of date 9 January, 1909. That no payments were ever made on this note until 29 March, 1913, when the same was paid off. That the same was presented to the administrators of H. C. Harris, but was not admitted by them, and that prior to said presentment the note had been paid. That on 28 July, 1914, Robert Harris, Jr., guardian of Nettie R. Harris, brought suit on said note in the Superior Court of Rockingham County against the administrators of H. C. Harris. I therefore find that the note was paid prior to said presentment and suit, and if not paid, but in existence, it was at the time of the suit barred by the statute of limitations. Therefore, I find that Robert Harris, Jr., guardian of Nettie R. Harris, is entitled to recover nothing from the estate of H. C. Harris. I further find that at the time of the last transaction, Nettie R. Harris was insane, and was confined in the State Hospital at Morganton."

His Honor overruled all exceptions and confirmed the referee's report. The claimant, Robert Harris, Jr., excepted and appealed.

*H. R. Scott and King, Sapp & King for plaintiff.*
*Thomas C. Hoyle for appellant, Robert Harris, Jr.*
*J. I. Scales, J. M. Sharp, H. W. Cobb, Jr., and Fentress & Jerome for defendants.*

ADAMS, J. The administrators with the will annexed of H. C. Harris filed a petition before the clerk for an order to sell land to make assets. The devisees and beneficiaries under the will, who were parties defendant, filed several answers, and the cause was thereupon transferred to the civil-issue docket for trial in the Superior Court. The court directed all claimants to file with the administrators the original evidence of their claims for the purpose of inspection by the defendants. Thereafter, his Honor referred all matters in controversy, with instruction to the referee to embody his finding of facts and conclusions of law in a report to be made at an ensuing term, and authorized those holding claims to make proof thereof before the referee. To the disallowance

by the referee of the appellant's claim, exception was taken, and duly renewed before the judge upon confirmation of the referee's report.

When the case was called for argument in this Court, the defendants moved to dismiss the appeal on the ground that the appellant, Robert Harris, Jr., is not a party to the suit. They rely upon *Dickey v. Dickey,* 118 N. C., 956, and *Strickland v. Strickland,* 129 N. C., 84. These cases are authority for the position that in a proceeding to sell land for assets the creditors of a decedent may not be made parties plaintiff with the personal representative. There is no order in the record which makes claimants against the decedent's estate coplaintiffs with the administrators. The order permitting them to prove their claims before the referee necessarily implied the right to introduce evidence pertinent to the issue joined as to all claims not admitted. On the hearing the creditors became actors, and their claims were subject to contest by the administrators and by the beneficiaries under the will. The proceeding, therefore, was analogous to a creditors' bill brought to prevent undue preference and to marshal the assets of the estate. It necessarily follows that the creditor, upon rejection of his claim by the referee, became for the purpose of the suit such party aggrieved as is given the right of appeal by the express terms of the statute. C. S., 632.

The defendants contended that the note in question had never been delivered by the makers to the payee, Mrs. Nettie Harris. On 2 October, 1908, Mrs. Harris was adjudged insane, and on 9 January, 1909, the note, which was executed by the old firm of Robert Harris & Brother, passed into the possession of Robert Harris, the payee's husband. Robert Harris, Jr., testified that he had no reason to believe that Mrs. Harris had ever seen the note. On 29 March, 1913, the new firm of Robert Harris & Brother paid the note by checks which were endorsed by Robert Harris in the name of the payee. The situation, then, was this: the old firm executed the note to Mrs. Harris and delivered it to her husband; afterwards the new firm paid the note by checks, which were endorsed by her husband in the name of the payee. Did these transactions constitute a delivery of the note to Mrs. Harris? Delivery means transfer of possession, actual or constructive, from one person to another. C. S., 2976. In *Purviance v. Jones,* 16 Am. St. Rep., 320, it is said: "While it is not indispensable that there should have been an actual manual transfer of the instrument from the maker to the payee, yet, to constitute a delivery, it must appear that the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it, and intentionally placing it under the power of the payee, or of some third person for his use. The acts which consummate the delivery of a promissory note are not essentially different from those required to

complete the execution of a deed.  Act and intention are the two ele-
ments essential to the delivery of a deed, which is ordinarily effected
by the simple manual transfer of possession from the grantor to the
grantee, with the intention of passing the title and relinquishing all
power and control over the instrument itself.  The final test is, Did the
maker do such acts in reference to the deed or other instrument as evince
an unmistakable intention to give it effect and operation, according to
its terms, and to relinquish all power and control over it in favor of the
grantee or obligee?  *Weber v. Christen,* 121 Ill., 91; 2 Am. St. Rep., 68;
*Stone v. French,* 37 Kan., 145; 1 Am. St. Rep., 237."  Section 2997 of
Consolidated Statutes provides that where the instrument is no longer
in possession of a party whose signature appears thereon, a valid and
intentional delivery by him is presumed until the contrary is proved.
It is true that Robert Harris was a member of each of the two partner-
ships, and that the note was signed by him in the name of the old firm,
but his acceptance and subsequent endorsement of the checks in his wife's
name and his collection of the money thereon indicate that the old firm
by delivering the note to him intended to make it an enforceable obliga-
tion for the benefit of Mrs. Harris.  Indeed, the question of nondelivery
seems not to have been raised at the hearing, for the referee held that
the note had been paid.

In the next place, the defendants insist that the new firm acquired
the assets and assumed the liabilities of the old firm with the knowledge
and acquiescence of the claimant, evidenced by his filing proof of the
note before the trustee of the new firm after the adjudication in bank-
ruptcy, and that the claimant thereby exercised such right of election as
released the estate of the retired partner from all liability.  Conceding
that the two partnerships were distinct entities, and that the new firm
assumed the liabilities of the old, it becomes material to inquire into
the relation that existed between the partnerships *inter se,* as well as
between them and the creditors of the old firm.

It has been held that the rule is probably without exception that an
agreement on dissolution of a partnership by which one or more of the
partners take the interest of their copartners, agreeing to pay all part-
nership liabilities, does not relieve the retiring partners from liability to
firm creditors.  *Smith v. Shelden,* 25 Am. Rep., 529; *Skinner v. Hitt,*
32 Mo. App., 402.  Likewise, it has been held in most jurisdictions that
where a firm is dissolved and one of the partners takes the assets and
assumes the liabilities, as between themselves with respect to existing
debts, the members of the new firm become the principal debtors, and
the retiring partner a surety.  But the decisions are by no means unani-
mous as to the relation existing between the two partnerships and the
creditors of the old firm.  The weight of authority in England, sustained

by authorities in America which command great respect, is to the effect that the relation of principal and surety as between the partnerships must be observed by those who have notice of the agreement and thereafter deal with the new firm. Other authorities hold that the creditors of the old firm are not affected unless they consent to the change, and that in the absence of such consent all the members of the old firm remain principals and joint debtors. *Dean v. Collins,* 9 L. R. A. (U. S.), 4, and notes. We do not understand the defendants' counsel as contending that the claimant cannot maintain his suit on the ground that his ward was not in privity with the new firm. *Withers v. Poe,* 167 N. C., 372. But they argue that if the new firm was principal and the old firm surety, the claimant released the old firm by electing to proceed in bankruptcy against the later partnership. If it be conceded that between the two firms there existed the relation of principal and surety, and that the claimant had knowledge of such relation, did filing proof of his claim with the trustee in bankruptcy constitute such an election as precluded him from prosecuting his claim before the referee? The doctrine of election is founded on the principle that where by law or by contract there is a choice of two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. A party cannot, either in the course of litigation or in dealing *in pais,* occupy inconsistent positions. In the language of the Scotch law, "A man shall not be allowed to approbate and reprobate." 9 R. C. L., 957; *Crossman v. Universal Rubber Co.,* 13 L. R. A., 91, and note. But the doctrine of election applies only where two or more existing remedies are alternative and inconsistent. If the remedies are not inconsistent, there is no ground for election. Illustrations of this doctrine, in its application to consistent and to inconsistent remedies, appear in numerous decisions of this Court. *Rounsaville v. Ins. Co.,* 138 N. C., 195; *Parker v. Ins. Co.,* 143 N. C., 339; *Huggins v. Waters,* 154 N. C., 444; *Fields v. Brown,* 160 N. C., 295; *Machine Co. v. Owings,* 140 N. C., 503.

Both the old firm and the new became liable to the claimant's ward— the former by virtue of the note, and the latter by assuming the debts of the old firm. *Voorhees v. Porter,* 134 N. C., 594; *Withers v. Poe,* 167 N. C., 373. The liability of each firm arose out of contract. The mere proof of claim in bankruptcy did not necessarily waive the claimant's right to enforce his contractual demand by any other appropriate legal remedy. In *McFadgen v. Council,* 88 N. C., 220, this Court held that where a discharge in bankruptcy had been refused, or the proceedings determined without a discharge, a creditor who had proved his claim in bankruptcy did not thereby waive his right of action against the

bankrupt in the State court. This decision was based on the act of 1874; but Collier, discussing the question, says:

"The effect of proof of a debt on a right of action was much debated under the former law, which in terms provided that he who proved his debt in bankruptcy waived his right to enforce it by any other legal remedy. But the better opinion was that the waiver endured only until a discharge was granted or refused. The amendatory act of 1874 made this view also the written law. That the same is the law today, with the exception that a suit may probably be begun and, unless stayed, prosecuted to judgment, is undoubtedly true. So, also, is the old-time rule that the remedy thus suspended comes into being the moment the discharge is granted or denied. But the State court does not lose jurisdiction. The stay is directed to the suitor, not the court, and the latter may go on if the cause is moved by the person enjoined, and a judgment resulting will be valid. The remedy of a party thus aggrieved is in contempt proceedings. It is important, however, to note that if a stay is not granted and the suit proceeds and judgment is entered *after* the discharge, the latter cannot be set up as a release to the judgment. A stay of a suit pending in the State courts effected by an injunction issued by a court in bankruptcy is not a dismissal of the suit. It does not defeat the cause of action pending in the State court; it merely suspends the proceedings as long as the injunction is in force."

If, notwithstanding proof of claim, a creditor, in the absence of a stay of proceedings, may prosecute his suit to judgment against the bankrupt, *a fortiori* may such creditor maintain his action against the original debtor, who became surety on a contract which was made without the creditor's consent. Certainly the claimant's remedies, even if alternative, were not so inconsistent as to estop him from prosecuting the present demand by the mere filing of his proof of claim against the bankrupt's estate. We therefore hold that the doctrine of election may not be invoked in bar of the present action. We have examined the authorities relied on by the defendants, and have concluded that they are not controlling upon the record in this case.

The referee held that the note had been paid, or, if not paid, that it was barred by the statute of limitations.

Mrs. Harris made her first loan of money to Robert Harris & Brother in 1904, and thereafter made other loans from time to time. These different loans were included in the note of $8,400, dated 9 January, 1909. It is not necessary to decide whether the execution of the note should be considered as a conditional payment, or as collateral security, or as a mere acknowledgment of the amount due. *Bank v. Hollingsworth,* 135 N. C., 571. The statute of limitations may be determined by reference to C. S., 416: "No acknowledgment or promise is evidence

of a new or continuing contract, from which the statutes of limitations run, unless it is contained in some writing signed by the party to be charged thereby; but this section does not alter the effect of any payment of principal or interest."

The note, when executed, became evidence of a contract, new or continuing, from which the statute of limitations, except for the ward's disability, would have begun to run. *Phillips v. Giles,* 175 N. C., 412; *Shoe Store Co. v. Wiseman,* 174 N. C., 716. Mrs. Harris was adjudged insane on 2 October, 1908. C. S., 407, provides that if a person entitled to commence an action be insane at the time the cause of action accrues, he may bring his action within the time limited, after the disability is removed. The note was executed on 9 January, 1909. The personal representatives of H. C. Harris were appointed 13 July, 1913, and the guardian of Mrs. Harris on 15 July, 1913. If it be granted that the statute of limitations commenced running against Mrs. Harris at the time her guardian qualified, the action would not be barred until the expiration of three years from that date. The guardian was not required to bring suit within one year after the administrators of H. C. Harris qualified; C. S., 412, enables a party to bring suit after the time limited has expired and within one year after the issuing of letters testamentary or of administration on the estate of the party against whom the cause of action accrued. Suit was instituted by the guardian within three years after his qualification, and it is therefore not barred by the statute of limitations.

It is equally clear that the note has not been paid. We have said that when it went into the hands of the payee's husband, the makers intended that it should be a contract enforceable for the benefit of Mrs. Harris, and that the transaction, as to the makers, constituted a delivery. But the delivery of the note to the husband of the insane payee did not signify that he was empowered to collect it. The right of collection was vested exclusively in the guardian. The endorsement of the checks and the collection of the money by Robert Harris were without authority of law, and therefore did not exonerate the old firm from liability on the note. The claimant is entitled to recover whatever amount may be found to be due on the note sued on after deducting all proper credits.

On the appeal of Robert Harris, Jr., as guardian of Mrs. Nettie Harris, the judgment is

Reversed.

WALKER, J., did not sit.