L. T. CARROW v. ELIZABETH C. WESTON, ADMINISTRATRIX OF THE
ESTATE OF F. E. WESTON, DECEASED.

(Filed 26 February, 1958.)

1. **Sales §§ 20, 21—**

   Where the seller accepts the purchaser's check in payment of a cash
   sale and the check is thereafter dishonored, the seller has his election
   to treat the sale as void and recover the chattel or the specific funds
   in the hands of the purchaser derived from resale, or he may elect to
   ratify the sale and seek to recover the contract price.

2. **Waiver § 1—**

   A person *sui juris* may waive practically any right he has unless
   forbidden by law or public policy.

3. **Election of Remedies § 1—**

   Where a person has a choice of two remedies which are irrecon-
   cilable so that the assertion of one must exclude the other, he is put to
   his election.

4. **Executors and Administrators § 15h—**

   Claimant accepted checks in payment of cash sale of logs which, upon
   delivery, were commingled with other logs of the purchaser or manufac-
   tured into lumber. The checks were not paid. Upon the death of the pur-
   chaser, plaintiff asserted a preferred claim against the estate for the
   amount of the purchase price. *Held:* Since plaintiff could not identify the
   logs or any specific sum in the hands of the administratrix derived from
   the sale thereof, the claim is a general claim, regardless of whether it be
   considered an action to recover the purchase price on the contract of
   sale or as a claim in tort for the wrongful conversion of the property
   by the purchaser.

APPEAL by defendant from *Parker, J.,* November Term, 1957,
of MARTIN.

Civil action to determine status of plaintiff's claim against
the *insolvent* estate of F. E. Weston, heard below on an agreed
statement of facts.

Prior to his death on June 21, 1956, Weston was "engaged in
the business of buying and selling logs and lumber, and operat-
ing a sawmill."

On June 15, 1956, plaintiff, also one Godard, in separate trans-
actions, sold and delivered logs to Weston. These were cash
transactions. As purchase price, Weston agreed to pay $389.50
to plaintiff and $82.47 to Godard. These amounts represented
the fair market value of the logs. Weston gave a separate check
to each seller for the amount due; and each seller accepted Wes-
ton's check in good faith. However, upon presentation, each
check was dishonored by the drawee bank because of insufficient
funds and neither the check nor the purchase price has been
paid. Thereafter, Godard sold and assigned all his rights to
plaintiff.

Upon delivery to Weston, the logs "were commingled with other logs on the mill yard of said F. E. Weston or manufactured into lumber, so that same could not be identified and recovered."

Plaintiff alleges that he has a claim for $471.97 with interest from June 15, 1956; that it is "preferred . . . to all other debts against said estate"; and he prays that it be so adjudged, also "for such other and further relief," etc. He alleges also that he filed with defendant, the administratrix, "an itemized and verified claim representing the sale of said logs and said worthless checks," and demanded that it be accepted "as a preferred claim to all other debts against said estate"; but that defendant refused to allow plaintiff's claim as a preferred claim, having notified plaintiff, in accordance with the position now taken in defendant's answer, that plaintiff would be "treated only as an unsecured creditor."

The court awarded judgment in plaintiff's favor for $471.97 and adjudged that said amount "be paid to plaintiff out of the funds now in the hands of said administratrix, prior to the payment by her of any unsecured debt *or costs* of administration," and that defendant pay the costs. (Our italics)

Defendant excepted and appealed, assigning as error the said judgment and each of the three separately stated conclusions of law upon which it was based.

*R. L. Coburn for plaintiff, appellee.*
*Peel & Peel for defendant, appellant.*

BOBBITT, J. In his complaint, also in the "itemized and verified claim" theretofore filed with the administratrix, plaintiff asserted a right to recover the total of the two worthless checks, to wit, $471.97, being the amount Weston agreed to pay as purchase price for the logs; and plaintiff's action is to establish that his claim for $471.97 is *a preferred claim against the estate.*

The court's legal conclusions were: (1) that "no title passed to . . . Weston by reason of the delivery of the logs to him . . ."; (2) that *"the value of said logs* in the possession of . . . Weston or his administratrix . . . constitutes a trust fund" for the benefit of plaintiff and "is now so held by said Administratrix"; and (3) that "said fund is not a part of the estate of . . . Weston, in that it is not subject to the payment of debts and costs of administration." (Our italics)

The court held, in effect, that plaintiff had no claim against the estate; but that the administratrix had in her possession a fund of $471.97 that belonged to plaintiff, not to the estate.

In this jurisdiction, ". . . where the seller *contracts* to sell a chattel to the buyer for cash, and the seller accepts a check from the buyer as a means of payment of the cash and delivers the chattel to the buyer in the belief that the check is good and will be paid on presentation, no title whatever passes from the seller to the buyer until the check is paid; and the seller *may* reclaim the chattel from the buyer in case the check is not paid on due presentation." *Wilson v. Finance Co.*, 239 N.C. 349, 79 S.E. 2d 908, and cases cited. (Our italics) The rule, as stated, is applicable where the seller elects to reclaim the chattel, *Weddington v. Boshamer*, 237 N.C. 556, 75 S.E. 2d 530, or to recover a specific fund in the hands of the buyer's administrator identified as derived solely from an unauthorized sale of the chattel, *Parker v. Trust Co.*, 229 N.C. 527, 50 S.E. 2d 304. In reaching its said first conclusion of law, perhaps the court had this rule in mind.

But a seller, who accepts a check as a cash payment, need not elect to treat the sale as void if the check is dishonored. "A person *sui juris* may waive practically any right he has unless forbidden by law or public policy." Seawell, J., in *Clement v. Clement*, 230 N.C. 636, 55 S.E. 2d 459. The contractual obligation of the buyer to pay cash is a provision solely for the benefit of the seller. If he elects to do so, the seller may waive this provision and ratify the sale. *Wilson v. Finance Co., supra.* Moreover, he may do so after he has knowledge that the check, originally accepted as conditional payment, has been dishonored. If he so elects, the remedy then available to the seller is to recover on the contract, *i.e.*, the debt due him as agreed purchase price for the chattel. If the rule were otherwise, a dissatisfied buyer could avoid his obligation to pay the agreed purchase price simply by giving a worthless check therefor or by stopping payment on his check, leaving the seller no remedy except to reclaim a chattel he did not want.

"The doctrine of election is founded on the principle that where by law or by contract there is a choice of two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. A party cannot, either in the course of litigation or in dealing *in pais*, occupy inconsistent positions." Adams, J., in *Irvin v. Harris*, 182 N.C. 647, 653, 109 S.E. 867. Where a sale is voidable, because induced by fraud, the applicable rule is well stated by Dillard, J., in *Wilson v. White*, 80 N.C. 280, as follows: "If a vendor of goods is drawn in to part with his property by fraudulent misrepresentation or concealment of a fact material to the contract and operating as an inducement thereto, and such as a man of ordinary sagacity might reasonably rely on and be influenced by, the sale is voidable, and the vendor has the option

24—247

to affirm the sale and sue for the price, or hold it null and sue for the goods in specie, as against the purchaser or a stranger holding without valuable consideration or with notice of the fraud. Benj. Sales, 342; Story Sales, Sec. 165; Bigelow Fraud, Sec. 2." See, also, *Joyner v. Early,* 139 N.C. 49, 51 S.E. 778, and cases cited. The rule as stated applies equally when, as here, the seller may treat the sale void or may waive the provision for cash payment and ratify the sale.

Here plaintiff was required to elect as between two available but inconsistent remedies. As succinctly stated in 78 C.J.S., Sales Sec. 597: "If the seller sues to recover the debt, he looks to the debtor and not to the property; and if he retakes the property, he looks to the property and not to the debtor."

It follows that, if plaintiff ratified the contracts of sale, his remedy is to recover *on contract* the agreed purchase price. In such event, he is a general creditor for $471.97; and his claim is payable out of the assets of the estate.

On the other hand, if the plaintiff elected to treat the sale as void, nothing else appearing, he is entitled to assert a claim against the estate for the fair market value of the logs when wrongfully converted by Weston to his own use. It is stipulated that such fair market value was $471.97. A tort claim so asserted would be a general claim, payable out of the assets of the estate. Under the agreed facts, the result would be a general claim for the identical amount, whether asserted as a contract claim or as a tort claim.

We pass, without decision, the question as to whether plaintiff, by filing his claim as aforesaid and by alleging his cause of action as aforesaid, has elected to ratify the sales and by doing so is estopped to proceed otherwise than as a general creditor; for the agreed facts do not support the judgment on the theory on which it was rendered.

If we assume that plaintiff has elected or may elect to treat the sales as void, before he can establish that he, not the estate, is the owner of funds now in the hands of the administratrix, he must trace and identify such funds as derived from the logs or from lumber manufactured therefrom. The court was in error in its second conclusion of law, namely, "that *the value of said logs* . . . constitutes a trust fund." (Our italics) Plaintiff must establish that the administratrix actually has in her hands funds derived from the disposition of the logs and the amount of such funds. On this theory of the case, it is necessary to keep in mind that we are concerned with plaintiff's ownership of specific funds now in the hands of the administratrix, not with a claim by plaintiff against the estate.

Did the logs remain in that status or were they used in the manufacture of lumber? Were they sold, or otherwise disposed of, by Weston in his lifetime? If sold, for what amount? What became of the money, if any was collected? Did these logs, or lumber manufactured therefrom, or any part thereof, or any logs or lumber, ever come into the possession of the administratrix? What funds does the administratrix have in hand? What part thereof, if any, was obtained from her sale of these logs or lumber manufactured therefrom, or from the sale of any logs or lumber? The agreed facts afford no answers. Nothing is established as to what became of these logs or any logs or lumber manufactured therefrom or as to the source from which such funds as the administratrix may have were derived. In this connection, it is noted that, even if it were shown that these logs, as such, actually came into the possession of the administratrix, and that she sold them, plaintiff's recovery on this theory of the case would be the actual amount she received from such sale (not the price Weston had agreed to pay therefor), that is, if plaintiff elected to ratify her sale rather than seek to recover the actual logs from the person then in unlawful possession thereof. *Parker v. Trust Co., supra.*

If no title passed to Weston, no title passed from Weston to the administratrix. She "stands in the shoes" of her intestate. *McBrayer v. Harrill,* 152 N.C. 712, 68 S.E. 204; *Parker v. Trust Co., supra; Sales Co. v. Weston,* 245 N.C. 621, 97 S.E. 2d 267. If we were to assume that the logs came into her possession as the result of Weston's wrongful conversion thereof, the question would arise as to whether technically either Weston or the administratrix would be deemed a constructive trustee. Ordinarily, a constructive trustee has *legal* title as well as possession. See Restatement, Restitution Sec. 160(j); Scott on Trusts, Sec. 508.1, p. 3255. Be that as it may, to establish ownership of any funds now in the hands of the administratrix, plaintiff must identify such funds as traceable to and derived from the logs with the same degree of certainty as is required to trace and identify trust property or funds. See *Trust Co. v. Barrett,* 238 N.C. 579, 78 S.E. 2d 730, and cases cited.

The agreed facts establish that plaintiff has a general claim against the estate for $471.97, nothing more, which defendant admits. Hence, there is error in the judgment. Accordingly, the cause is remanded for modification of the judgment so as to strike therefrom the provisions that purport to give plaintiff's claim for $471.97 a status other than that of a general claim against the estate. It is so ordered.

Error and remanded.