ODES REDMOND, TRADING AS ODES REDMOND COMPANY, v. THOMAS LILLY, JOE L. ANDERSON AND SLOSMAN CORPORATION.

(Filed 10 April 1968.)

**1. Sales § 10—**
   Where the seller accepts the purchaser's check in payment of a cash sale and the check is thereafter dishonored, the seller has the election to treat the transaction as void, leaving title to the chattel in himself, or to treat it as a sale, thereby transferring title to the buyer so as to make the buyer liable to him for the agreed purchase price.

**2. Election of Remedies § 1—**
   One who makes an election between two inconsistent rights with full knowledge of the facts giving rise to such rights may not subsequently proceed upon the contrary alternative.

**3. Sales § 10—**
   The institution of an action by the seller against the buyer of goods to recover the purchase price is an election by the seller to treat the transaction as a sale, and title to the goods is thereby vested in the buyer, and plaintiff is thereafter precluded from maintaining an action for the recovery of the goods or for their conversion by a purchaser from his vendee.

APPEAL by defendant Slosman Corporation from *Clarkson, J.*, at the 4 September 1967 Schedule B Civil Session of MECKLENBURG.

The plaintiff alleges in his complaint: He is engaged in the business of buying and selling textile waste. On 17 August 1965 the individual defendants, after inspecting a quantity of textile waste in the plaintiff's place of business, contracted with the plaintiff, he agreeing to sell the waste to the individual defendants for a total price to be computed on the basis of certain prices for the varying grades, the grading to take place when the goods were loaded. On 20 August the waste was loaded upon a truck, which the individual defendants had caused to be brought to the plaintiff's place of business, being graded as loaded. The grading was completed after the end of the normal work day, at which time the parties were not in a position to calculate the total sale price. At that time, the individual defendants delivered to the plaintiff a check for $4,000, which he was to hold until the total sale price could be accurately computed. On 24 August the individual defendants returned to the plaintiff's place of business and the total sale price of the waste was computed to be $4,509.21. Thereupon, the individual defendants delivered to the plaintiff $1,000 in cash and a check for $3,509.21. Two or three days later, the plaintiff inquired of the drawee bank and was informed that the drawer did not have sufficient funds on deposit in the bank to pay the check. Thereafter, the plaintiff forwarded the check through the normal banking channels for presentment. Payment was refused by the drawee as the result of a stop-payment order. Thereafter, the plaintiff ascertained that the waste had been transported to the corporate defendant's place of business and notified it that the waste had been obtained from the plaintiff by false pretense and fraud. At that time, the corporate defendant had not made any payment to the individual defendants on account of these goods, but thereafter did pay them $3,713.30. The corporate defendant is not a purchaser in good faith, did not acquire title to the goods and is liable to the plaintiff for the return of the goods or the fair value thereof, which value is $3,509.21 (the unpaid balance of the purchase price agreed upon between the plaintiff and the individual defendants). The individual defendants have failed and refused to pay the balance of the purchase price which was due "on August 24, 1965," and "the plaintiff is entitled to interest thereon from that date from the individual defendants." Wherefore, the plaintiff prays judgment against the individual defendants for $3,509.21, plus interest, and against the corporate defendant for "the return of the goods to which the corporate defendant did not acquire title or for $3,509.21, "the value thereof."

The corporate defendant demurred to the complaint for failure to state a cause of action against it. This demurrer was overruled.

The corporate defendant then filed answer denying the allegations of the complaint with reference to it and denying, for lack of information, those relating to the individual defendants. The answer pleads, as affirmative defenses, that the corporate defendant is a *bona fide* purchaser for value without notice of any defect in the title of the individual defendants and that the plaintiff is estopped for the reason that the corporate defendant paid the individual defendants for the goods in reliance upon a statement of the plaintiff that he had no objection to its so doing.

The individual defendants filed no answer and a judgment by default final for the unpaid balance of the purchase price under their contract with the plaintiff was entered against them. There is nothing in the record to indicate that any portion of this judgment has been paid.

Upon the trial of the matter as between the plaintiff and the corporate defendant, the jury found that the plaintiff is the owner and entitled to the immediate possession of the waste, the plaintiff is not estopped to claim such ownership and the fair market value of the waste on 23 May 1966 (the date the complaint was filed in this action) was $4,509.21 (the agreed purchase price as between the plaintiff and the individual defendants), less $1,000 paid in cash to the plaintiff by the individual defendants. From a judgment in accordance with the verdict, the corporate defendant appeals.

The plaintiff testified that the goods, previously weighed, were loaded at and hauled away from his place of business on Friday, 20 August 1965, the grading and loading being completed after nightfall. He further testified: "At that time, we had not computed what the grand total was going to be for the sale of these goods. We were to be paid for the goods when they took the goods out. It was supposed to have been a cash sale and that night it was so late we didn't tally up the figures and Mr. Lilly gave me a $4,000 check and he was to take his figures and I was to take mine and which we did and we tallied them up and he came back Tuesday and picked up the $4,000 check and gave me $1,000 cash and $3,509.21 check to cover the total."

The plaintiff further testified that prior to 15 September, and after the check had been returned to him by the drawee bank, he telephoned the corporate defendant, informed it what had happened and requested it to "hold up" its payment to the individual defendants. Subsequently, he received from the corporate defendant a letter showing payments made by it to the individual defendants, the first of which was on 15 September, the total of such payments being $3,713.30. Nothing has been paid to the plaintiff on account of this

transaction except the $1,000 in cash paid by the individual defendants on 24 August.

The evidence for the defendant was to the following effect:

The defendant purchased the waste from the individual defendants at a price subject to its own customer's grading and report, unloaded it into its own warehouses and, on or about 26 August, resold and reshipped the entire lot to its own customer. Most of it was returned to it by that customer and was of negligible value, the part retained by the customer being worth about $4,000. Upon the receipt of its customer's reports, the corporate defendant computed the amounts to be paid by it to the individual defendants and issued its checks to them therefor on 15 September, 7 October and 13 November.

The corporate defendant had no communication with the plaintiff until 7 October when it telephoned the plaintiff. At that time, Anderson, one of the individual defendants, was in the office of the corporate defendant to receive a further payment from it and, for the first time, the corporate defendant learned that the individual defendants had purchased the goods from the plaintiff, who was "impatient about getting paid for it." Thereupon, the president of the corporate defendant telephoned the plaintiff and explained that the corporate defendant had to wait for the final report from its customer concerning the waste before it could make its final payment to the individual defendants. At that time, he asked the plaintiff if the plaintiff wanted the corporate defendant to make payments to him. The plaintiff replied that the corporate defendant was "dealing with Mr. Anderson" and should make its payments to him, which it did.

The assignments of error relate to the overruling of the demurrer by the corporate defendant to the complaint, the denial of its motions for judgment of nonsuit, and to alleged errors in and omissions from the charge of the court to the jury.

*Grier, Parker, Poe & Thompson by Gaston H. Gage for defendant appellant.*

*Haynes, Graham and Baucom for plaintiff appellee.*

LAKE, J. The rights of the parties must be determined in accordance with the law of this State as it was prior to the adoption of the Uniform Commercial Code, the transactions out of which this action arises having occurred prior to 30 June 1967. G.S. 25-10-101.

Under the law of this State prior to 30 June 1967, if the owner of a chattel contracted to sell it to a buyer for cash and delivered

it to him in exchange for a check, believed by the seller to be good at the time it was accepted, the seller could, upon the dishonor of the check, recover the chattel from the buyer on the ground that the legal title had not passed from the seller to the buyer. *Carrow v. Weston,* 247 N.C. 735, 102 S.E. 2d 134; *Wilson v. Finance Co.,* 239 N.C. 349, 79 S.E. 2d 908. See also 46 Am. Jur., Sales, §§ 447, 563. Legal title to the chattel not having passed to the buyer, a subsequent purchaser from the buyer, even though a purchaser for value and in good faith, could acquire no better title than the first buyer (his seller) had. Consequently, upon the dishonor of the check, the original seller, being still the owner of the chattel, could recover it from such subsequent purchaser, whether *bona fide* or not, or could treat such subsequent purchaser as a converter of his property and recover from him its value. *Wilson v. Finance Co., supra.* If, however, such seller elected to treat the transaction as a sale and to recover judgment from the buyer for the agreed purchase price, he could do so. *Carrow v. Weston, supra.* See also 46 Am. Jur., Sales, § 448. That is, the seller, to whom a bad check was given for the purchase price, had an election to treat the transaction as no sale, leaving title to the chattel in himself, or to treat it as a sale transferring the title to the buyer so as to make the buyer liable to him for the agreed purchase price. These alternatives are, obviously, inconsistent. The seller could not exercise both of these rights against the buyer. "A party may not ratify a sale by suing for the sale price and at the same time attack the validity of the sale." Strong, N. C. Index, 2d ed., Election of Remedies, § 1.

One, who has an election between two inconsistent rights and, with full knowledge of the facts giving rise to such rights, makes such election, may not subsequently proceed upon the contrary alternative. *Carrow v. Weston, supra; Irvin v. Harris,* 182 N.C. 647, 109 S.E. 867; 25 Am. Jur. 2d, Election of Remedies, § 7. The institution of an action by the seller against the buyer for the collection of the agreed purchase price, with full knowledge of the facts giving the seller the right to treat the transaction as no sale, is an election by the seller which he may not thereafter reverse so as to deny the title of the buyer to the goods. Williston on Sales, rev. ed., § 648b; 46 Am. Jur., Sales, § 658. See also *Bruton v. Bland,* 260 N.C. 429, 132 S.E. 2d 910, holding that an election once made by a defrauded buyer to treat the transaction as a sale is final so as to preclude the buyer thereafter from maintaining an action for recision.

In the present action, the plaintiff has elected to sue the individual defendants (his vendees) to recover from them the balance due him upon the agreed purchase price of the goods. Having so

elected, he may not, in this action, or in one subsequently brought, proceed against the individual defendants upon the theory that the sale was void and passed no title to them. As between the plaintiff and the individual defendants, his filing suit against them for the contract price vests title to the goods in them as of the time it would have vested in them had no fraud been perpetrated. The effect of the transaction, plus such election by the plaintiff, is the same as if the goods had been sold by the plaintiff to the individual defendants on credit, free from fraud. Having elected to sue the individual defendants (its vendees) for the agreed price of the goods, the plaintiff may not now maintain an action against the individual defendants to recover the possession of the goods or to recover damages on the theory of conversion. 46 Am. Jur., Sales, §§ 565, 657, 658.

Having thus elected to treat the transaction between him and the individual defendants as a sale to the latter, the plaintiff may not now maintain an action for the recovery of the goods or for their conversion by a purchaser from his vendee. Such purchaser would acquire the title and right of the individual defendants (the plaintiff's vendee) and would not, by receiving, using or disposing of the goods, become liable to the plaintiff for conversion of his property, for it is not his. Obviously, such subsequent purchaser would not be liable to the plaintiff for any balance due the plaintiff from his vendee on account of the contract between him and his vendee, nor would he be under any duty, nothing else appearing, to pay over to the plaintiff any balance owing from such subsequent purchaser to his vendor (the plaintiff's vendee-debtor).

In the present action, the plaintiff has filed one complaint seeking recovery from his vendees of the balance of the purchase price and seeking recovery from the subsequent purchaser from those vendees of the value of the goods on the theory that such subsequent purchaser is a converter of them. It thus appears upon the face of his complaint against the corporate defendant that he has made an irreversible election to treat the transaction between him and the individual defendants as a sale of the goods. This being true, there appears upon the face of the complaint not merely a failure to allege some fact which is an element of a right of action against the corporate defendant, but an affirmative allegation of a fact which establishes that the plaintiff has no right of action against the corporate defendant. Consequently, the demurrer should have been sustained and the action dismissed as to the corporate defendant. This being true, it is unnecessary to consider the remaining assignments of error.

Reversed.