**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff-Appellee,**

v.

**M.F. CROUCH, Clifford E. Hemingway, and Mary Hemingway, Defendants-Appellants.**

No. 85–6005.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1986.

Decided April 22, 1987.

Rehearing Denied June 4, 1987.

Russell D. Carroll, Taylor and Groover, Knoxville, Tenn., Jack Hamilton (argued), Charlotte, N.C., for defendants-appellants.

Rex R. Veal, Knoxville, Tenn., Patricia Horton (argued), for plaintiff-appellee.

Before KRUPANSKY and RYAN, Circuit Judges, and EDWARDS, Senior Circuit Judge.

RYAN, Circuit Judge.

This is an action on a promissory note. The maker and guarantors appeal the district court's order granting summary judgment in favor of F.D.I.C. Appellants contend that North Carolina law, which governs this case, requires F.D.I.C. to foreclose upon the collateral securing the note before personal judgment may enter against them. The district court disagreed and held that even though foreclosure was pending in a separate jurisdiction, F.D.I.C. was entitled to judgment as a matter of law. We agree.

I

On July 19, 1978, appellant Crouch, as maker, executed a promissory note to the United American Bank of Knoxville in the amount of $340,000. The note is secured by a deed of trust on a leasehold estate located in North Carolina. On the same day, the Hemingways, as guarantors, also executed a guaranty agreement securing the note. The guaranty provides that North Carolina law governs the construction and interpretation of its terms.

F.D.I.C. was appointed receiver when the United American Bank collapsed in 1982. The bank's assets, including the note and

guaranty involved in this case, were transferred to First Tennessee Bank. After default upon the note, First Tennessee Bank brought suit in state court against Crouch and the Hemingways. Subsequently, F.D.I.C. purchased the note from the bank, was substituted as plaintiff in this action, and removed the case to federal district court.

Thereafter, the Hemingways notified F.D.I.C. that, pursuant to N.C.Gen.Stat. § 26–7, F.D.I.C. would be required to attempt to satisfy its claim against Crouch and the deed of trust before proceeding against them. F.D.I.C. initiated foreclosure proceedings in North Carolina as required by the statute.

In the district court, F.D.I.C. obtained a partial summary judgment of liability against the appellants. The court rejected the appellants' argument that N.C.Gen. Stat. § 26–7 and the pending foreclosure reduced F.D.I.C.'s claim to a mere contingency for such deficiency as may result. The court determined that a cause of action accrued against the maker and guarantors at the time of default on the promissory note. On August 27, 1985, the district court granted F.D.I.C.'s motion for summary judgment, holding the appellants jointly and severally liable on the note.

In this appeal, Crouch and the Hemingways contend that the district court erred in granting F.D.I.C.'s motion for summary judgment. They raise three assignments of error: (1) that N.C.Gen.Stat. § 26–7 precludes personal judgment prior to realizing upon the collateral securing the note; (2) that the maker's right under N.C.Gen.Stat. § 45–21.36 to challenge the sufficiency of value received from the sale of collateral is impaired by the district court's decision to allow F.D.I.C. to pursue personal judgment while simultaneously proceeding with foreclosure; and (3) that F.D.I.C. elected its remedy by initiating foreclosure on the deed of trust. Since there are no factual issues in dispute, our duty is to determine whether F.D.I.C. is entitled to judgment as a matter of law.

## II

North Carolina courts adhere to the general principles which govern the relationship between makers and guarantors of a debt. In *Gillespie v. DeWitt*, 53 N.C.App. 252, 280 S.E.2d 736, *review denied*, 304 N.C. 390, 285 S.E.2d 832 (1981), the court stated:

"A guaranty of payment is an absolute promise by the guarantor to pay a debt at maturity if it is not paid by the principal debtor. This obligation is independent of the obligation of the principal debtor, 'and the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity.'"

*Id.* at 741 (quoting *Properties v. Norburn*, 281 N.C. 191, 188 S.E.2d 342, 345 (1972)). Thus, in *Exxon Chemical Americas v. Kennedy*, 59 N.C.App. 90, 295 S.E.2d 770 (1982), the court rejected the guarantor's contention that when the debtor's bankruptcy terminated the debtor's obligation, the guarantor's liability also terminated. The North Carolina court held that the guaranty created a primary obligation arising immediately upon default and independent of the principal debtor's obligation. Accordingly, the creditor was not required to exhaust his remedies against the principal before proceeding against the guarantor.

The Hemingways' guaranty agreement provides, in pertinent part:

"The undersigned Guarantors hereby absolutely and unconditionally guarantee to United American Bank in Knoxville (the Bank) the due and punctual payment of the Promissory Note and any and all other indebtedness, obligations, and liabilities, primary or secondary of Borrower to Bank arising under the Promissory Note or the Deed of Trust of even date herewith from borrower to J. Donnell Lassiter and Glen B. Hardyman, Trustees for the Bank, together with interest as and when the same becomes due and payable whether by acceleration or otherwise.... *In the event of the default of Borrower in the due and punctual payment of the indebtedness, Bank shall not be required to proceed first against Borrower or against any collateral se-*

*curity before resorting to and proceeding against the Guarantors for payment."* [Emphasis added.]

It is beyond dispute that this agreement provides for the accrual of a cause of action against the guarantors upon the default of the maker. Indeed, the Hemingways expressly waived any right to require F.D.I.C. to proceed first against Crouch and the collateral. This guaranty, like that considered in *Exxon Chemical,* is a primary obligation.

However, N.C.Gen.Stat. § 26–7 provides: "(a) After any note, bill, bond or other obligation becomes due and payable, any surety, endorser, or guarantor thereof may give written notice to the holder or owner of the obligation requiring him to use all reasonable diligence to recover against the principal and to proceed to realize upon any securities which he holds for the obligation."

The Hemingways asserted their rights under this statute by notifying F.D.I.C., in writing, to proceed first against Crouch and the deed of trust. The Hemingways contend that the statute requires F.D.I.C. to "realize upon any securities" *prior* to obtaining a personal judgment against the guarantors.

Although there are no North Carolina cases interpreting this statute, we must nevertheless decide this case in accord with North Carolina law. Therefore, "this Court is obligated to exercise its best judgment as to how the [North Carolina court] would rule if confronted with this issue." *Cathey v. Johns-Manville Sales Corp.,* 776 F.2d 1565, 1569 (6th Cir.1985). *See also Andrew v. Bendix Corp.,* 452 F.2d 961 (6th Cir.1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1773, 32 L.Ed.2d 119 (1972).

Chapter 26 of North Carolina General Statutes is entitled "Suretyship." The general provisions of §§ 26–1 *et seq.* govern the relationship between guarantors and the principal obligor on a debt. Section 26–1 allows the guarantor to assert and prove his status. Section 26–2 requires the sheriff to levy first on the principal's property to satisfy the judgment; and "for want of sufficient property," only then to

proceed against the guarantor for satisfaction.

These provisions contemplate that a creditor will proceed simultaneously against the maker and guarantor to establish *liability.* However, nothing prevents a creditor from proceeding against a guarantor alone. Sections 26–1 *et seq.* are unavailing to the guarantor who fails to establish his suretyship. Therefore, nothing prevents the sheriff from selling the guarantor's property to satisfy a resulting judgment. Indeed, § 26–3 provides a summary remedy in subrogation for the guarantor who pays the principal's debt. *Pebbles v. Gay,* 115 N.C. 38, 20 S.E. 173, 175 (1894).

■ In this case, however, the creditor did not proceed against the Hemingways alone, as it might have done. Instead, suit was initially brought against both Crouch and the Hemingways. Only later, and at the Hemingways' insistence, did F.D.I.C. initiate foreclosure proceedings on the deed of trust. Therefore, the crux of the Hemingway's argument is that § 26–7 is more protective of their rights as guarantors than the more general provisions of §§ 26–1 *et seq.* We agree with this contention. Nevertheless, the Hemingways' argument that § 26–7 evinces the North Carolina legislature's intent to estop a creditor from proceeding against the guarantors before attempting to satisfy the debt against the maker is untenable. Section 26–7 is essentially an enforcement provision. Once the guarantor invokes this section, as the Hemingways have done in this case, the creditor's delay in pursuing the principal will result in exoneration for the guarantors. *First National Bank v. Homesley,* 99 N.C. 531, 6 S.E. 797 (1888). Though not as extensive as the Hemingways contend, this is substantial protection for the guarantor who deems himself in danger of loss. *See A Survey of Statutory Changes in North Carolina in 1951: Suretyship,* 29 N.C.L.Rev. 351, 413 (1951).

Additionally, the plain language of § 26–7 belies the Hemingways' contention. It requires only that the creditor "use all reasonable diligence to recover against the

principal."[1] F.D.I.C. began foreclosure proceedings on the deed of trust in a North Carolina state court. However, there is evidence in the record that the leasehold estate securing this note has been subleased. Under the terms of an unrecorded consent order, dated July 19, 1978, F.D.I.C. cannot foreclose upon the leasehold interest without assuming Crouch's liability. Furthermore, it appears that Crouch filed suit against the owner of the premises in January 1986, making the leasehold the subject of current litigation in North Carolina. As a practical matter, therefore, F.D.I.C. is precluded from realizing upon the collateral. We think F.D.I.C. has satisfied the plain requirements of § 26–7.

■ Moreover, it is unlikely that a North Carolina court would construe § 26–7 to allow a guarantor to circumvent the express provisions in a guaranty agreement. *Amoco Oil v. Griffin*, 78 N.C.App. 716, 338 S.E.2d 601, 602, *review denied*, 316 N.C. 374, 342 S.E.2d 889 (1986). The Hemingways expressly waived any right they may have had to require F.D.I.C. to proceed first against Crouch and the collateral. We conclude that the North Carolina legislature did not intend to depart from the general principles of suretyship recognized for many years in the courts of North Carolina. In light of the express terms in the guaranty, we find nothing to prevent F.D.I.C. from obtaining personal judgment against the Hemingways prior to realizing upon the collateral.

### III

■ The appellants' next assignment of error involves the maker's rights under § 45–21.36 to challenge the sufficiency of value received for collateral securing a note. In *First Citizens Bank & Trust Co. v. Martin*, 44 N.C.App. 261, 261 S.E.2d 145 (1979), the court stated:

"We ... note that it has been the law of our State for many years that a creditor whose debt is secured by way of a mortgage or deed of trust has the choice of

two actions: one *in personam* for his debt; and the other *in rem* to subject the mortgaged property to its repayment— and a resort to one such action is no waiver of the other."

*Id.* at 148. In addition, the creditor "may combine the two remedies in one civil action." *Underwood v. Otwell*, 269 N.C. 571, 153 S.E.2d 40, 42 (1967). Therefore, N.C. Gen.Stat. § 45–21.36 applies only where the creditor has chosen to pursue the collateral instead of the debtor and is seeking a deficiency. Until these events trigger its operation, this statute is not applicable. *See Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co.*, 210 N.C. 29, 185 S.E. 482, 484 (1936), *aff'd*, 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552 (1937). We agree with the district court that § 45–21.36 is not applicable in this case.

### IV

■ Finally, appellants argue that the doctrine of election of remedies bars F.D.I.C.'s claim in this case. In *Douglas v. Parks*, 68 N.C.App. 496, 315 S.E.2d 84, 85 (1984) (citing *Irvin v. Harris*, 182 N.C. 647, 109 S.E. 867, 870 (1921), the court stated: "The doctrine of election applies only where two or more existing remedies are alternative and inconsistent." Because *First Citizens Bank & Trust* clearly rejects the contention that the remedies in this case are inconsistent, appellants' argument is without merit.

In conclusion, we find that the district court correctly granted summary judgment to F.D.I.C. North Carolina law does not preclude a creditor from pursuing personal judgment while simultaneously proceeding with foreclosure in a separate jurisdiction. F.D.I.C. was entitled to judgment as a matter of law.

The decision of the district court is affirmed.

KRUPANSKY, Circuit Judge, dissenting.

Because the majority misconstrues the protections afforded to the defendants by

---

1. In this context, see *Taylor v. Bridger*, 185 N.C. 85, 116 S.E. 94 (1923), construing the predecessor to § 26–7 and finding the requirement of

"reasonable diligence" satisfied by making the insolvent principal a party in the action. *See also* 38 Am.Jur.2d, *Guaranty*, § 108.

the state law joined in issue on this appeal, I am constrained to dissent.

An initial examination of the record is in order to furnish the factual context of the instant dispute. The defendant M.F. Crouch (Crouch) on July 19, 1978 executed a promissory note in the amount of $340,-000 to United American Bank in Knoxville, Tennessee (UAB–K). The defendants Clifford and Mary Hemingway, husband and wife (the Hemingways), simultaneously executed a guaranty agreement in favor of UAB–K whereby they guaranteed payment of the note. The note represented Crouch's indebtedness for a loan from UAB–K for Crouch's purchase of an interest in a North Carolina business. The note and accompanying guaranty were transferred to First Tennessee Bank (FTB) upon the failure of UAB–K. Upon Crouch's default on the loan, FTB filed suit in Tennessee state court. The Federal Deposit Insurance Corporation (FDIC) subsequently acquired the note as part of a purchase and assumption agreement and was substituted as the plaintiff in the state action.

The FDIC thereafter removed the suit to federal court. Subsequent to the Hemingway's service of notice upon the FDIC to proceed against the collateral pursuant to North Carolina law, N.C.Gen.Stat. § 26–7, the FDIC also initiated a state action in North Carolina to foreclose upon Crouch's leasehold interest located in that state, which had served as security for the loan. While those proceedings were pending, the FDIC filed a motion in the federal district court for summary judgment against the three defendants regarding their respective liability on the obligation. The magistrate granted summary judgment in favor of the FDIC, rejecting the defendants' contention that, under North Carolina law, the pendency of the state foreclosure proceedings with respect to the security rendered the FDIC's claim premature and thus barred entry of judgment in its favor.

On appeal, the defendants did not dispute their liability as maker or guarantors, respectively, on the promissory note, but rather contended that two North Carolina statutory provisions precluded the district court's entry of personal judgments against them while foreclosure proceedings were pending in North Carolina state court. *See* N.C.Gen.Stat. §§ 26–7, 45–21.36.[1]

Chapter 26 of North Carolina General Statutes incorporates the law of suretyship in that jurisdiction. Specifically, § 26–7 provides as follows:

> 26–7. Surety, indorser, or guarantor may notify creditor to take action.
>
> (a) After any note, bill, bond, or other obligation becomes due and payable, any surety, indorser, or guarantor thereof may give written notice to the holder or owner of the obligation requiring him to use all reasonable diligence to recover against the principal and to proceed to realize upon any securities which he holds for the obligation.

N.C.Gen.Stat. § 26–7(a). A subsequent section of the statute elaborates upon the effect of a creditor's failure to take appropriate action in the face of such notice:

> § 26–9. Effect of failure of creditor to take action.
>
> (a) If the holder or owner of the obligation refuses or fails, within 30 days from the service or receipt of such notice, to take appropriate action pursuant thereto, the following persons shall be discharged on any such note, bond, bill or

---

1. In actions involving the FDIC, the court entertaining the suit should reference the appropriate state law to furnish a rule of decision when a uniform national rule is not a prerequisite to effectuate federal interests, application of the particular state law will not unduly frustrate specific objectives of the federal program, and imposition of a federal rule would disrupt commercial relationships predicated upon state law. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Warner v. Central Trust Co.,* 798 F.2d 167, 171–72 (6th Cir.1986); *FDIC v. Armstrong,* 784 F.2d 741, 744 (6th Cir.1986); *FDIC v. Wood,* 758 F.2d 156, 159 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). This being such a case, the defendants properly invoked state law in this situation. The magistrate below did not reach this issue, however, given his contrary construction of the relevant provisions of state law.

other obligation to the extent that they are prejudiced thereby:

    (1) The surety, indorser or guarantor giving such notice,

\*   \*   \*   \*   \*   \*

    (b) The fact that an instrument contains a provision waiving any defense of any surety, indorser or guarantor by reason of the extension of the time for payment does not prevent the operation of this section. Any such notice to the holder or owner of the obligation as is authorized by G.S. 26–7 may be given at or subsequent to the time such obligation is due or at or subsequent to the termination of a period of extension.

N.C.Gen.Stat. § 26–9(a)(1), (b).

The Hemingways correctly contended that the magistrate's entry of judgment against them personally in favor of the FDIC prior to the conclusion of the FDIC's foreclosure action and suit against defendant Crouch as the maker was violative of § 26–7. The manifest intent of the foregoing chapter considered in its totality as well as the specific cited provisions is to protect guarantors from such judgments prior to a determination of the extent of liability, if any, of the guarantor subsequent to the holder's realization of the collateral and recovery from the principal. A contrary construction of the legislative enactment in question would render meaningless its obvious prophylactic purpose with respect to guarantors such as the Hemingways, inasmuch as the financial reputations of guarantors would be subject to premature and ruinous judgments which are a matter of public record in amounts far exceeding any liability which might eventually and properly attach after foreclosure and recovery from the principal. In the instant matter, the FDIC, after receiving proper written notice from the Heming-

ways, instituted foreclosure proceedings in North Carolina state court, which action was ongoing at the time of the magistrate's grant of summary judgment and apparently also at the time of argument before this court. In light of such pending proceedings against both the security and the principal (Crouch) and the pertinent North Carolina law on the subject, it was improper to render judgment at that premature stage against the defendant guarantors and the district court's entry of judgment should accordingly be reversed as to the defendants Clifford and Mary Hemingway.[2]  Accordingly, I dissent.

---

**2.** The defendant Crouch further contended that N.C.Gen.Stat. § 45–21.36, which governs the right of a mortgagor to prove in a deficiency suit the reasonable value of property by way of defense in the event that the mortgagee has assumed title of the property, protected him as a maker or principal on the note from entry of a personal judgment prior to conclusion of the FDIC's foreclosure proceedings against the security. As a maker or principal, however, Crouch did not occupy a status similarly protected pursuant to North Carolina law as did the Hemingways as guarantors. The foregoing statutory provision would properly apply at a later stage in the event that the FDIC purchased the leasehold interest in question when the power of sale were executed and sued Crouch for the amount of the deficiency, in order to ensure that the FDIC paid a fair market price for that interest.